CORNET ET AL. *v.* GUEDELHOÉFER ET AL.

[No. 27,630. Filed October 21, 1941. Rehearing denied November 27, 1941.]

202

*Frank B. Ross, Samuel J. Mantel, Robert S. Smith* and *Paul G. Davis,* all of Indianapolis, for appellants.

*Wymond J. Beckett* and *George & Ryan,* all of Indianapolis, for appellees.

RICHMAN, J.—Appellants filed exceptions to the final report of appellee executor. There was a hearing at which evidence including oral testimony was submitted. The court overruled the exceptions and entered judgment approving the report and discharging the executor. Motion for new trial was overruled. All questions in this appeal arise on the assignment of error that the finding of the court is not sustained by sufficient evidence and is contrary to law.

The record discloses that Pauline A. Guedelhoefer died March 1, 1935, and on the same day her will was probated and the executor qualified. Inventory disclosed personal assets appraised at $24,599.66. Decedent also owned real estate in Indianapolis the value of which does not clearly appear but exceeded $50,000 and in one of the briefs is stated as $100,000. It appears from one of the briefs that in the absence of a will decedent's estate would have descended, one fourth to her brother, Bernard J. Guedelhoefer, one fourth to her brother, August F. Guedelhoefer, one fourth in equal shares to her niece Cecelia G. Cornelius, and nephews Harry J. Guedelhoefer and Otto C. Guedelhoefer, Jr., and the remaining one fourth in equal shares to appellants herein, her niece Madalyn Cornet and her nephew John Cornet, Jr.

The two brothers and Cecelia Cornelius received nothing under the will. The chief beneficiaries named therein were the two appellants and John and Bertha Guedelhoefer, the latter two being the children of August F. Guedelhoefer. These four were the devisees

of all the real estate and also the residuary legatees, sharing equally. John Guedelhoefer also received a $5,000 bequest and was named as executor. The other three were bequeathed in equal parts decedent's stock in Railroadmen's Building and Saving Association valued at $4,171.10. There were bequests of $2,000 to Otto and $500 to his brother Harry. Six other nieces and nephews received $500 each. The total pecuniary bequests in specific amounts were $10,800 which included $100 each to three charitable institutions. It was also directed that the executor pay a mortgage on the property of two cousins. The amount, not named in the will, is shown to have been $2,415.70. The only other provision in the nature of a bequest was a direction that the executor pay for certain masses. Payment of $500 to Bishop Ritter evidently covers this item.

Shortly after his qualification the executor took charge of decedent's real estate, collected the rents and profits therefrom and commingled them with the proceeds of the personal property. He paid from this one fund decedent's debts, funeral expenses, all administration expense including attorney's and executor's fees, inheritance, estate, property and gross income taxes, expense of repairs on buildings and finally all pecuniary legacies with interest after the first year of administration. March 6, 1937, he filed his final report showing in detail his receipts and expenditures. There was a deficit of $14,466.35 which Bertha Guedelhoefer provided, evidently pursuant to § 6-1150, Burns' 1933, § 3188, Baldwin's 1934, giving bond as provided therein, in order to avoid the sale of the real estate to pay such deficit. The court's order on final settlement declared that for three-fourths of this sum she should have a lien upon the three-fourths interest therein of John Guedelhoefer, John Cornet, Jr. and Madalyn Cornet.

The executor sold the Building and Loan Association stock specifically bequeathed to Bertha Guedélhoefer and the two Cornets the proceeds going into the general fund.

Cecelia G. Cornelius, belatedly, on March 2, 1935, filed objections to probate of the will and in December thereafter filed suit to contest the will. This action was compromised by the surrender to her of a note executed by her deceased father that had been inventoried as an asset of decedent's estate in the sum of $8,312.10.

So much for the general background of facts. Others will be referred to in connection with the several questions presented by the points and authorities.

Appellants challenge the judgment approving the report on five principal grounds: First, that the executor wrongfully sold the Railroadmen's Building and Savings Association stock which was specifically bequeathed to them and Bertha Guedelhoefer; second, that he wrongfully took charge of the real estate and collected rents and profits therefrom which belonged to the specific devisees, appellants and Bertha and John Guedelhoefer; third, that he paid in full the general legacies which should have lapsed in whole or in part because of insufficiency of personal assets; fourth, that the inheritance taxes should have been collected from the beneficiaries and not paid out of the *corpus* of the estate; and, fifth, these payments being erroneous the court should not have charged the real estate with the lien of the claim of Bertha Guedelhoefer for moneys advanced to pay the deficiency between the executor's total receipts (excluding said sum so advanced) and his disbursements.

The law does not require that the estate of a decedent shall be administered through court proceedings. The

heirs, or the legatees and devisees after a will ██ has been probated, may by agreement dispense with formalities prescribed by statute which, in the absence of agreement, are binding upon an administrator or executor. In order to confirm the rights of the heirs or of beneficiaries of a will, it is essential that those obligations of the decedent or of his estate which by law are made superior claims against the assets, shall be paid or otherwise settled. In the order of these claims fixed by § 6-1301, Burns' 1933, § 3195, Baldwin's 1934, so far as applicable herein, the executor was required to pay:

"First. The expenses of administration." Unquestioned items in the final report totalled $11,289.82. This includes a fee of $5,000 for the executor and an equal amount for his attorneys. In connection with these items there was evidence that besides the ordinary routine of administration, disregarding any service rendered in managing the real estate, the executor settled the suit contesting the will, compromised for $2,415.70 the obligation created by Item III of the will to pay the mortgage on property of decedent's cousins which totalled $4,194.18, compromised for $158.97 litigation begun by decedent in her lifetime by which title was confirmed to real estate which the executor says "was reasonably worth at least Ten Thousand ($10,000) dollars," settled the claim of John G. Cornet, Sr. against decedent in the sum of $7,500 by offsetting a $2,500 claim of decedent against him. Whether these services were taken into consideration by the court in fixing the fees of executor and his attorneys does not appear but it is significant that the fees were unquestioned by appellants in the exceptions and therefore stand unchallenged as valid first obligations against the assets of the estate.

"Second.   The expenses of the funeral of the deceased."   $774.86.

"Third.   The expenses of . . . last sickness."   $70.00.

"Fourth.   Taxes accrued upon the real and personal estate of the deceased at his death, and taxes assessed upon the personal estate during the course of administration."   It has been held that taxes accrue on the day the lien thereof attaches. *Barnum* v. *Rallihan* (1916), 63 Ind. App. 349, 112 N. E. 561.   Taxes for the year 1934, which became a lien on March 1, 1934, were $1,674.16, and for the year 1935, which became a lien on the day decedent died, were $1,803.94.   Personal property tax was $1.89.   The federal estate tax was $923.23.   We shall refer to the inheritance taxes hereafter.

"Seventh.   General debts."   Decedent owed August F. Guedelhoefer on her notes and check $3,875.89.   We are unable to say from the report whether any of the items totalling $1,872.89 listed as "general debts" accrued prior to decedent's death, so we treat them as expenditures of the executor in managing the real estate after he took over.

"Eighth.   Legacies."

We summarize the items which under the seven clauses of the statute must be paid before legacies:

| | |
|---|---|
| First | $11,289.82 |
| Second | 774.86 |
| Third | 70.00 |
| *Fourth ____$1,674.16, 1.89, 923.23, | 2,599.28 |
| Seventh | 3,875.89 |
| TOTAL | $18,609.85 |

The inventory shows total personal property of the appraised value of $24,599.66 of which $8,321.10 was used as a consideration to Cecelia Cornelius in █ settlement of the will contest, leaving $16,278.56 which included the Building and Savings Association stock. For these assets the report shows that the executor realized $16,632.98, which lacked approximately $2,000 of being enough to pay the obligations superior to legacies. This affords sufficient reason for his selling the stock and not surrendering it to the specific legatees. But there was also evidence from which the probate court may properly have concluded that the executor's action in this respect was with the express approval of appellants. They testified otherwise but the fact was for the determination of the trial court and his conclusion on a disputed question of fact will not be disturbed on appeal.

Where there is sufficient personal property to satisfy the charges specified in the first seven clauses of the statute, and where the devisees of the real estate are present to take charge thereof, an executor has no duty with respect to his decedent's real estate unless a contrary intent of the testator appears from the will. Only four persons were given interests in decedent's real estate, the two appellants and John and Bertha Guedelhoefer. Apparently they all reside in the county where the real estate is located. Either of them could have exercised acts of ownership. None of them did. There is evidence from which the trial court may properly have found that after decedent's death

---

* The property taxes which became a lien March 1, 1935, under § 64-402, Burns' 1933, § 15525, Baldwin's 1934, might be considered the primary obligation of the four devisees. For our purposes herein it is not necessary that they be included.

the four recognized that there would be an insufficiency of personal assets, that it was desirable to avoid sale of the real estate which was then unincumbered save for tax liens, and that the executor should collect the rents to be used in payment of the obligations of the estate, that from the date of his qualification he did collect the rents, with their knowledge and without their objection until July 1, 1936, when he filed a current report to which appellants filed exceptions. Had these rents as they accrued been paid to the devisees, sale of some part of the real estate could not have been avoided unless at least $2,000 be advanced to meet the deficiency above noted. These circumstances justify the court in sustaining the executor's action with respect to the rents at least to the extent of their use for the payment of all the items preceeding, "Eighth. Legacies."

Conceding the general rule that for insufficiency of personal assets general legacies lapse *pro tanto* we are met with the appellees' contention that appellants expressly agreed that *all* such legacies should be paid, out of the real estate if necessary. On the 16th day of January, 1936, at the time of settlement of the will contest, a written contract was executed. All persons signed it for whose signatures it was prepared, namely, the heirs, including the contesting heir and appellants, and the executor. It recites the terms of the will and the fact of the suit to contest and that it is the desire to compromise the same and to fix the amount that Cecelia should take. Then follow seven contractual paragraphs: The first providing for the surrender to Cecelia of the note for $8,000 (appraised at $8,312.10) which had been inventoried as an asset of decedent's estate; the second providing that the executor should procure a release of a claim for $10,369.40 against the estate of Cecelia's father; the

third requiring dismissal at the cost of the estate of Pauline A. Guedelhoefer of the suit to contest her will; the fourth that Cecelia should take the aforesaid note in full settlement of her interest in decedent's estate and the fifth reading:

"5. That the last will and testament of said Pauline A. Guedelhoefer shall stand as her legal and valid last will and testament, and all valid legacies and bequests provided for in her said will shall be paid in full."

By the sixth, Cecelia's brothers, Harry and Otto, acknowledged the validity of the $8,000 note as a claim against their father's estate. The seventh relieved Pauline's estate from any claim of Cecelia's attorneys for their fees.

It is claimed by appellees that by the quoted paragraph appellants agreed that the legacies should be paid in full even if it became necessary to sell the real estate for that purpose. It will be noted that the first clause of this paragraph confirms the validity of the will. If no more had been said it might reasonably be contended that there was no intention to add to the rights of the legatees a benefit which testatrix had not seen fit to make, namely, a provision charging the real estate with the payment of legacies in the event the personal assets were insufficient. But the parties to the contract were more explicit and in the second clause of the paragraph provided that "all valid legacies and bequests provided for in her said will shall be paid in full." If this means only that they shall be paid in full if the personal assets are sufficient, it is tautological for the first clause so provided. We cannot treat as surplusage any words in a contract to which may be ascribed some contractual significance. Viewed most favorably for appellants there is ambiguity. In such case we may look for explanation to the circum-

stances attending the execution of the contract. Within the knowledge of all the parties was the fact of a deficiency of personal assets. Two of the parties were brothers of decedent who by this contract were surrendering their rights as heirs and receiving nothing for themselves as consideration. Both of them had children who were named as legatees. For the benefit of their children the brothers of decedent might well have desired full payment of the legacies even if the real estate must be sold to provide sufficient funds. Certainly that was the desire of Harry J. and Otto C. Guedelhoefer Jr. and the guardian of the latter. These two would get nothing by the contract except the payment of their legacies. To meet this desire the language of the second clause is appropriate, otherwise surplusage.

It may be argued that there was no intention to charge the interests of the devisees with the payment of legacies because two of them were not parties to the contract. The matter could not be put at rest without their signatures. Some support for this view is found in the preamble which recites only one object of the contract, to terminate the will contest.

But that object would have been accomplished if the quoted paragraph had been omitted from the contract. It would have sufficed merely to procure Cecelia's promise to take the agreed consideration in full settlement of her claims and to dismiss her action. Such dismissal would have left the will in force to be administered according to law and the legacies would have lapsed *pro tanto* for insufficiency of personal assets. The fifth paragraph evidences a different intention, the more specific purpose that all legacies shall be paid. Why John and Bertha Guedelhoefer were not made parties is not apparent. Perhaps they had already

so committed themselves that no one considered their agreement necessary. Bertha testified to a conversation between Madalyn Cornet, John Guedelhoefer and herself concerning the sale of the stock at which time she and Madalyn both consented to its sale and the use of the proceeds and of the rents of the real estate "to pay up all the legacies and the bills." The fact of John's acquiescence may be assumed from his signature as executor. Bertha's assent appears extrinsically not only by her testimony but by her conduct in advancing the funds necessary to pay all legacies in full. They and appellants were the only persons adversely affected. The other legatees certainly need not expressly consent to a contract made for their benefit. Their acceptance of benefits which entailed no other action upon their part might be assumed.

If Bertha Guedelhoefer had objected to the arrangement, the court could not have enforced the same as to her interest in the real estate. But we see in this no reason why appellants should not be bound by their own agreement as to their interests in the real estate, even beyond their equal shares of the deficiency. Nothing in the contract shows any intention that it shall be ineffective if others than the heirs and executor do not sign. The question is not as to the equities of the parties but as to the meaning of a written instrument. That meaning, we have concluded, was that all legacies should be paid in full and its consequence was resort to the real estate, if only thereby could all the legacies be paid. Appellants having so agreed cannot be heard to object on the ground that others who did not agree might have been so heard had they objected.

This is not like the case of *Hess* v. *Lackey* (1921), 191 Ind. 107, 132 N. E. 257, where the contract showed

on its face that it was not a completed instrument because it lacked the signatures or other assent of persons named as contracting parties. Such was also the contract in *Becker* v. *Becker* (1910), 46 Ind. App. 93, 97, 91 N. E. 966, where the court said that the avoidance of a will contest "could only be assured by all the heirs' joining in the agreement." The briefs in that case show more plainly than the opinion that the contract involved was to set aside a will, that some of the persons named therein as contracting parties did not sign and that their objection on this ground to the validity of the contract was sustained by the court. One who did sign changed his mind and joined the other objectors. But his action does not seem to have affected the proceedings. The case is like the Hess case, *supra,* except that there was pleaded a contemporaneous oral agreement that the written contract should be binding on all who signed regardless of the lack of others' signatures. This oral understanding was not given effect by the court. Whether in this respect the decision was correct we need not determine. It is not true here that the payment in full of the legacies could only be assured by all the devisees joining in the agreement. The two who did join in an agreement complete on its face are bound as to their interests without the assent of the others.

Thus far we have found sufficient evidence to sustain the decision of the lower court. This cannot be said of the item as to inheritance taxes. While the executor is required to pay such taxes before he may be discharged, he must, in the absence of agreement or direction in the will, deduct the tax payable by each beneficiary from his distributive share or, where tangible property is received, collect the tax from the beneficiary. Here the executor paid all inheritance

taxes, the amount thereof, $4,194.18, appearing in the deficit of $14,466.35 one fourth of which was made a charge upon the one-fourth interest in the real estate devised to each appellant. The record does not disclose the tax assessed against each beneficiary but it is apparent that there was a tax payable by every niece and nephew named as legatees and the action of the executor results in each appellant's having to pay some part of the tax chargeable to other beneficiaries.

Appellees contend that appellants orally consented to the payment of taxes out of the rentals from the real estate. We find no evidence that the inheritance taxes were mentioned in any of the conversations between the parties. Appellees also assert that the record does not show that appellants were harmed. The fact but not the extent of the harm appears and for this cause the judgment must be reversed.

The statute § 6-1150, § 3188, *supra,* does not spell out the procedure where bond is given to prevent sale of real estate. Where one of several persons equally interested furnishes the money to pay a deficit which otherwise would require the sale of real estate devised to them, it seems equitable that he should be reimbursed by the others proportionately and that he be secured by a lien upon their real estate so saved from sale. We do not think the probate court exceeded its powers in the character of the order so made in behalf of Bertha Guedelhoefer but the amounts must be redetermined because of our holding as to inheritance taxes.

Gross income taxes were paid by the executor upon the rentals received by him. The devisees would otherwise have had to pay. They suffered no apparent harm.

The judgment is reversed with instructions to sus-

tain appellants' motion for a new trial and for further proceedings in harmony with this opinion.

NOTE.—Reported in 36 N. E. (2d) 933.

On Petition for Rehearing.

RICHMAN, J.—Appellants have filed a petition for rehearing and brief wherein they say: "The single question which we now present to the Court is, was it right to pay all general legacies in full with interest and to pay no part of the specific bequest of $4,171.10 to the specific legatees?"

Our answer is that the same reasoning which justifies the payment of the general legacies in full with interest requires the payment of this specific legacy in full with interest. The logic of this position was overlooked in the original opinion.

John Guedelhoefer, Executor, has filed in this court a pleading designated "appellees' petition to correct certain calculations to conform to the Court's opinion" in which he offers to make adjustment as to the specific legacy and also as to the inheritance tax in conformity with our opinion. He overlooks therein the item of interest which is necessary in such adjustment. He asks that the judgment below be affirmed upon compliance with such adjustment which he treats in the nature of a remittitur. Appellants ask that a new trial be ordered.

We are of the opinion that a new trial is not necessary as there are only the two items for disposition which ought to be the subject of agreement since the principal amounts are undisputed and the interest may readily be calculated. In the absence of agreement the trial court should make such order as is necessary in the premises. The order should credit to each of the three specific legatees on the lien of Bertha Guedelhoefer

for moneys advanced, the difference between one third and one fourth of $4,171.10, with interest from one year after the date of decedent's death, and should charge against John Guedelhoefer individually the amount credited to the other three; this in addition to the adjustment for inheritance taxes erroneously charged as stated in the original opinion.

No other question being presented by the petition for rehearing the original mandate will be deemed modified in accordance herewith and both pending petitions will be denied. It is so ordered.

NOTE.—Reported in 37 N. E. (2d) 681.