**BURTON et al. v. BOWERS.**

No. 5825.

United States Court of Appeals
Fourth Circuit.

Feb. 4, 1949.

Albert Simons, Jr., Charles W. Waring and Huger Sinkler, all of Charleston, S. C., for appellants.

Harry Baum, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and Benjamin H. Pester, Sp. Asst. to Atty. Gen. and Ben Scott Whaley, U. S. Atty., and Louis M. Shimel, Asst. U. S. Atty., both of Charleston, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HENDERSON, District Judge.

HENDERSON, District Judge.

This action was brought by the plaintiffs as Trustees in Liquidation of the E. P. Burton Lumber Co., against the Collector of Internal Revenue for the State of South Carolina, seeking to obtain a refund of the amount of certain tax deficiencies paid under protest. From an adverse judgment they bring this appeal.

The E. P. Burton Lumber Co. was incorporated under the laws of South Carolina in 1904. Its charter was amended in 1913 by increasing the amount of capitalization and providing for the issuance of first preferred stock. The first preferred stock certificates contained the following provisions:

"First Preferred Stock: Eight Hundred Thousand ($800,000.00) Dollars, shall be entitled to a preference in the assets and property of the Company on its liquidation up to its full face value, and all unpaid dividends and all interest due thereon over both the Second Preferred and Common Stock, and shall also be entitled to a cumulative dividend at the rate of six (6%) per cent per annum, payable semi-annually, with interest to be compounded annually at the same rate, out of the net earnings of the Company, before the payment of any dividends on either the Second Preferred Stock or Common Stock of the Company;

such dividends on the said First Preferred Stock to accrue from the first day of October, 1913, and the first of such dividends to be payable on May 15th, 1914, and every six months thereafter, and must be paid in full or in part as may be earned.

"In case the net earnings of the Company be insufficient in any year to pay the dividends thereon, either in whole or in part, as herein provided, the balance so remaining unpaid shall be cumulative and be a charge upon the profits and proceeds of all property of this Company, until the full dividends are paid with compound interest, the right being reserved to the Company to retire, on the first day of October or April of any year, the entire issue of said First Preferred Stock or any part or parts thereof, upon the payment to the holders of such stock, its full face value, together with accumulated dividends thereon to the date of such payment with compound interest as herein specified, said retirement to be made in accordance with the provisions of the By-Laws of this Company."

During the period from May 15, 1914, through November 15, 1919, regular dividend payments were made without formal declarations by the Board of Directors.

In 1923 the Company's lumber mill was destroyed by fire, and it was decided to liquidate the Company. The major portion of its assets was sold in 1924, and by June 21st of that year all creditors of the Company had been paid. Payments to the stockholders during the remainder of 1924 and 1925 had the effect of retiring in toto all principal due on the first preferred stock with an excess of $14 per share. The Trustees allege that this amount was paid on the then existing accumulated dividends and the compound interest thereon. The certificates merely bear the endorsement, "Paid in partial liquidation on account within stock."

The Company was dissolved in 1927, and from that time through 1940, the Trustees in Liquidation filed corporation income tax returns which showed no taxable income. In 1941, the Trustees sold a part of the mill site for $30,000 and, in 1942, the remainder was sold for $75,000. This was the Company's last remaining asset. Out of these

proceeds the Trustees paid the first preferred stockholders a total of $9.53 per share, and recorded it on the backs of the certificates as "* * * partial liquidation of interest due on claim of former First Preferred Stockholders."

For the years 1941, 1942 and 1943 the Trustees filed fiduciary income tax returns claiming as deductions the disbursements made to the stockholders as "interest paid * * * on indebtedness" under section 23(b) of the Internal Revenue Code, 26 U.S.C.A. § 23(b). The gain derived from the sale of the real estate was reported as a long-term capital gain at one half of its value as is allowed taxpayers other than corporations under section 117(a) (10) (B), Internal Revenue Code, as revised, 26 U.S.C.A. § 117(a) (10) (B).

On the latter point, the court below decided that, under the law of South Carolina, the corporate entity continued, and that the Trustees were not entitled to the advantage of the long term capital gain. Appellants concede the correctness of this view, and that issue is not before us on this appeal.

The court below also decided that the Trustees were not entitled to deduct the payment made to the first preferred stockholders under the guise of interest on an indebtedness. We think this judgment is plainly correct and should be affirmed.

As authority for the deduction of these payments, the appellants rely on 26 U.S.C.A. § 23(b), which provides:

"Sec. 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, * * *."

It is clear that, in order for this section to apply, there must be an indebtedness. The appellants do not contend that the shares of first preferred stock themselves constitute an indebtedness, but properly admit that they are no more than evidences of capital investment. CF., May Hosiery Mills v. Commissioner, 4 Cir., 123 F.2d 858, 860; Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, 974. Their contention is that dividends for the years 1920-1927 constitute indebtedness of the corporation; and for this they rely upon the well settled rule that the declaration of a dividend establishes a debtor-creditor relationship between a corporation and its shareholders until the dividend is paid. Helvering v. McGlue's Estate, 4 Cir., 119 F.2d 167; Bryan v. Welch, 10 Cir., 74 F.2d 964. Here, however, no dividends had been declared. The appellants point to the Company's practice of paying dividends without formal declarations during the years 1914-1919, as establishing a "customary declaration", which they allege continued until the Company's dissolution; but the complete answer to this is that under the law, as well as under the Company's charter, dividends could only be paid from earnings and there were no earnings for the years 1920-1927.

The Board of Tax Appeals in Drayton Mills v. Commissioner, 19 B.T.A. 76, had before it the express question of whether so-called interest payments on deferred preferred stock dividends were deductible. In denying the taxpayer's claim, it stated:

"We think that these regulations correctly interpret the law and that the interest on deferred preferred dividends which petitioner seeks to deduct in this proceeding is not a deductible item. We hold that the preferred dividend provided for in the preferred stock certificate of petitioner was measured by the dividend proper, plus its accumulation, and the amount of this aggregate sum at the date declared would be the measure of the dividend. In other words, the preferred stockholder was entitled under his stock certificate to receive an amount equal to the 7 per cent dividend plus its accumulated interest before the common stockholder was entitled to receive any dividend at all.

"No indebtedness existed between petitioner and holders of the preferred stock until payment of the dividend with interest thereon was authorized, and then the relationship of creditor and debtor existed until payment of the dividend plus its so-called accumulated interest. * * * The action of the respondent in disallowing as a deduction the so-called interest paid on these preferred stock dividends for the

432

period prior to the date of declaration is approved."

 The cumulative preferred dividends constituted a charge upon the assets of the corporation to be observed in the marshalling of its assets, not an indebtedness which gave the preferred stockholder the status of a creditor. Dividends were not declared and, since there were no earnings, could not have been declared. The provision for payment of compound interest does not convert the obligation of the company to its preferred stockholders into an indebtedness due a creditor, but merely goes to the amount of dividends to be paid, if and when they are payable, and defines the rights of the preferred stockholders against other stockholders in the event of liquidation. An indebtedness is a very different matter. As said in Gilman v. Commissioner, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209: "A debt is 'that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit.' Webster's New International Dictionary. 'In order to create an indebtedness there must be an actual liability at the time, either to pay then, or at some future time.' Bouvier's Law Dict., [Rawle's Third Rev.], Vol.2, page 1531. 'Every debt must be solvendum in praesenti, or solvendum in futuro—must be certain and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a "debt." ' "

 Reference has been made to the consent judgment of a South Carolina State Court in a suit by the Trustees in Liquidation of the Burton Lumber Co., against the South Carolina Tax Commission, in which it was held that the amounts paid to the preferred stockholders were paid on interest; but it is perfectly clear that this decision is not binding in the assessment of federal taxes and nothing therein adjudicated has any bearing on the matter which we think to be controlling here.

The decision appealed from was correct and will be affirmed.

Affirmed.