246 F.2d 410
 MERCHANTS NATIONAL BANK and TRUST COMPANY OF INDIANAPOLIS, successor by consolidation to The Indiana Trust Company, executor and trustee under the will of Guy E. Street, deceased, Plaintiff-Appellee,
v.
UNITED STATES of America and Gary Campbell, district director of internal revenue, Defendants-Appellants.
 No. 11976.
 United States Court of Appeals Seventh Circuit.
 June 20, 1957.
 Rehearing Denied August 6, 1957.
 
 Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Jack C. Brown, U. S. Atty., Indianapolis, Ind., Harry Baum, Atty., Department of Justice, Washington, D. C., James L. Miller, Asst. U. S. Atty., Indianapolis, Ind., for appellant.
 Arthur H. Northrup, Indianapolis, Ind., for appellee.
 Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Plaintiff sued defendants in the district court for a refund of a payment made to the defendant Campbell, covering an estate tax net deficiency (and interest thereon) assessed against the estate of Guy E. Street, who died August 16, 1950 and whose will was probated in the Probate Court of Marion County, Indiana. Plaintiff is the executor and trustee under said will and is also referred to herein as the taxpayer.
 
 
 2
 We now state facts, as stipulated by the parties, or otherwise shown by the record before us, and as found by the district court.
 
 
 3
 By his will, deceased left certain personal property to his wife, other personal property to his daughter, and made specific bequests to four relatives. The rest of his estate by Item V of the will was placed in trust, 2% of the principal to be distributed during a ten year period to his wife, daughter and other beneficiaries in named percentages; and the income of the trust to be distributed to various beneficiaries, including 4/10 to his wife for life, at her death to their daughter, and at her death to grandchildren; the trust to continue for the lives of the various beneficiaries, the principal of the trust to be then distributed as provided in the will. The will provided, in part:
 
 
 4
 "Item I.
 
 
 5
 "I direct that all federal estate and state inheritance and estate taxes that may be assessed upon my estate or payable by any beneficiary thereof on account of the provisions hereof made in their behalf be paid from and out of my residuary estate.
 
 
 6
 "Item V.
 
 
 7
 "* * * 10. My Trustee is specifically authorized and empowered: * * * to apply the principal of the trust estate to the payment of any and all inheritance, estate, succession or other taxes, State or Federal, levied or assessed against my estate or any beneficiary thereof by reason of the transfers herein; * * *."
 
 
 8
 On February 14, 1951, the widow renounced the provisions made for her in the will and elected to take under the laws of descent of Indiana, reserving, however, her interest in life insurance policies of which she was beneficiary, her rights as surviving tenant by the entirety in certain real estate and all right, title and interest in property as to which decedent died intestate. The document containing her renunciation also stated, in part:
 
 
 9
 "It is not intended hereby and I do not release the Executor under the last will and testament of the said decedent and his estate from existing obligations to make payment of all federal estate taxes imposed upon any and all property hereinabove referred to, and all state inheritance and estate taxes."
 
 
 10
 In a proceeding for construction of the will and for instructions filed by the taxpayer in the Marion County Probate Court, the widow, heirs, legatees and beneficiaries of the trust were named as defendants, and proceedings were had, terminating in a decree directing, inter alia, the executor to pay all federal estate taxes and all inheritance taxes assessed by the United States, the state of Indiana or any other state, by virtue of the death of decedent or any transfer made by him, and not to receive reimbursement from any person. The United States was not a party to the probate court proceeding.[1]
 
 
 11
 In an estate tax return filed by the executor on November 16, 1951, a marital deduction[2] to the widow as surviving spouse was claimed. The commissioner of internal revenue determined that the marital deduction should be $280,933.55, which was computed by deducting from the amount of $344,925.59[3] (an adjusted value of property passing to the widow) the amounts of federal estate tax ($53,770.01) and state inheritance tax ($10,222.03) applicable to the property involved. The net assessed deficiency, resulting from this and other adjustments not here in issue, and amounting to $19,266.51, plus interest of $3,064.67, or a total of $22,331.18,[4] was paid to the district director on July 15, 1954. The claim for refund was filed and rejected.
 
 
 12
 The district court entered judgment in favor of the taxpayer on September 24, 1956, from which defendants appealed.
 
 
 13
 1. Defendants in this court argue in support of this proposition:
 
 
 14
 "The marital deduction claimed by the estate for the value of property passing to the widow was properly reduced by the Commissioner by the portion of the Federal estate tax and State inheritance tax attributable to this property."
 
 
 15
 Counsel for both sides rely on Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106. The court in that case held that the federal estate tax should be paid out of the estate as a whole. It also held that the applicable state law as to devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax. In Riggs v. Del Drago, § 124 of the New York Decedent Estate Law[5] was upheld because it was found not to be in conflict with the federal estate tax law, 26 U.S.C.A. § 800 et seq.
 
 
 16
 We must, therefore, ascertain and apply the law of Indiana to the questions presented on this appeal. On that subject we have the assistance of counsel, who have discussed that law in their briefs.
 
 
 17
 By renouncing the will and electing to take under the Indiana laws of descent, the widow received one-third of the estate after payment of debts.[6] Indiana has no statute for apportionment of federal estate taxes.
 
 
 18
 The language of testator's direction in Item I, pertaining to the payment of federal estate and state inheritance and estate taxes "that may be assessed upon my estate or payable by any beneficiary thereof on account of the provisions hereof made in their behalf * * *", includes, not only that property which the testator intended to transmit by his will, but also such property as the insurance policies involved in this case, and intestate estate. It can hardly be denied that intestacy embraces not only property which the decedent failed to mention in his will but also that property which passed as intestate upon the widow's renunciation of the provisions made in the will for her. All of this property — life insurance, property passing by the will, and property passing under the laws of intestacy of Indiana — was subject to federal estate taxes. As to all of these classes of property the duty devolved upon the executor, by virtue of Item I, to pay the federal estate and state inheritance taxes because they were assessed upon the decedent's estate. Accordingly they were paid by the executor. In so doing it was required of it that such payments be made "from and out of my residuary estate." In renouncing the provisions made for her in the will, the widow attempted to retain the benefit which would have inured to her under Item I. This she could not do under the law of Indiana, because the provisions made in the will for the widow were in lieu of her statutory rights in the estate. She may not take both. In Clark v. Clark, 132 Ind. 25, 31 N.E. 461, at page 462, the court said:
 
 
 19
 "* * * Such a contention would be in the face of all the authorities by which wills are construed and enforced. * * *"
 
 
 20
 In Rawley v. Sanns, 141 Ind. 179, 40 N.E. 674, at page 676, in speaking of a surviving husband, the court said:
 
 
 21
 "* * * The law cast on him absolutely one-third of both the real and personal property owned by his wife at her death, and no more. Burns' Rev.St.1894, § 2642 (Rev. St.1881, § 2485); Burns' Rev.St. 1894, § 2649 (Rev.St.1881, § 2488). This he could take against her will, or any will she might make. But, as against such a will, he could take no more than such one-third. He could not, as we have seen, take the one-third absolutely, and take the use, rents, issues and profits of the other two-thirds, or a life estate therein."
 
 
 22
 That which passed to the widow at the death of her husband became subject to federal estate taxes, inasmuch as testate as well as intestate estate passing to a widow was subject to the classes of claims listed by the Indiana statute.[7] It was said in Cornet v. Guedelhoefer, 219 Ind. 200, 207, 36 N.E.2d 933, 935, 37 N.E.2d 681, that, "In order to confirm the rights of the heirs or of beneficiaries of a will, it is essential that those obligations of the decedent or of his estate which by law are made superior claims against the assets, shall be paid or otherwise settled." The court referred to the classes of claims listed in the statute, the fourth class being taxes accrued upon the real and personal estate of the deceased at his death, and taxes assessed upon the personal estate during the course of administration. In that case both federal estate and state inheritance taxes were involved. Referring to the various classes of claims, including the fourth class, the court (219 Ind. at page 208, 36 N.E.2d, at page 936) stated: "We summarize the items which under the seven clauses of the statute must be paid before legacies * * *." In the summary the court included the federal estate tax.[8]
 
 
 23
 The Illinois law in respect to a renunciation by a widow is the same as the Indiana law. Therefore In re Estate of Donovan, 409 Ill. 195, 98 N.E.2d 757, 29 A.L.R.2d 215 is helpful in considering the effort of the widow in the case at bar to retain a benefit under Item I. In that Illinois case, 409 Ill. at page 98 N.E.2d at page 762, 202, the court said:
 
 
 24
 "* * * The rights of a surviving spouse who clearly renounces provisions of a will made in his or her behalf become fixed by the statute and are not affected by claiming or omitting to claim any specific estate upon renunciation. Davis v. Mather, 309 Ill. 284, 141 N.E. 209; Gullett v. Farley, 164 Ill. 566, 45 N.E. 972. * * *"
 
 
 25
 A similar view was taken in In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 38 A.L.R.2d 961, which, on the facts, is directly in point in this case. The court, 264 Wis. at page 377, 59 N.W. 2d at page 649, said:
 
 
 26
 "* * * In electing to take under the law she is not entitled to claim the benefit of the provision directing payment of federal estate taxes out of the residue. Such clause of the will remains effective as between the recipients of specific legacies and the remaindermen who take the residue, but the widow's renunciation of the will prevents such clause from being operative so as to relieve her share from the impact of the federal estate tax."
 
 
 27
 We, therefore, determine, pursuant to Indiana law, that the ultimate impact of the federal estate tax fell on the residuary estate, including the part of the estate passing to the widow as intestate property, and the insurance policies. The effect thereof is to reduce the marital deduction herein to $280,933.55. It follows therefore that the claim for refund was properly rejected.[9]
 
 
 28
 2. Plaintiff relies upon the decree of the Marion County Probate Court and states that the proceeding in that court was sharply adversary in form and in fact, and was clearly not collusive. It also argues that the probate court decree was not a consent decree or one obtained by collusion. It contends that the burden is on defendants to show consent, collusion or fraud. It relies on finding 6 by the district court which reads:
 
 
 29
 "There is no evidence * * * that there was any agreement or consent among the parties or any of them as to the substance of any part or all of the Probate Court's judgment so entered. Said Civil Probate No. 4261 was a genuinely contested proceeding and the interests of the widow and the Guardian Ad Litem in particular and of the defendants in general were directly adverse to each other."
 
 
 30
 Defendants take issue with these contentions and insist that the probate court proceedings were collusive in the sense that all parties joined in the submission of the issues and sought the same decision, which would adversely affect the tax rights of the government, which was not a party to those proceedings, as we have pointed out. We must, therefore, consider the facts appearing in the record which are relevant to the issues thus raised by the parties.
 
 
 31
 The attorney for the executor and the attorney for the widow were members of the same firm of lawyers.
 
 
 32
 With the exception of several formal answers merely calling for strict proof of the allegations of the complaint, and the widow's answer which expressly consented to the relief prayed for in the complaint, the only answer to the complaint of the taxpayer in the probate proceeding was filed on behalf of William McClenon, as guardian ad litem for two minor children and unborn children of himself and decedent's daughter Ruth Gladys McClenon. In that answer as amended, McClenon's attorney, Howard P. Travis, alleged that the widow by her election had lost all her rights to any property under the will, and that she should bear her proportion of the estate and inheritance taxes and should not benefit by Item I of the will.
 
 
 33
 The probate court held an oral hearing October 23, 1951, and ordered briefs filed. After briefs were filed on behalf of the executor and the widow,[10] and while Mr. Travis was preparing an answering brief, the probate court on February 21, 1952, entered a decree adjudicating the issues in favor of the widow.
 
 
 34
 Mr. Travis, on behalf of his clients, filed a motion for new trial on March 11, 1952, alleging that the decision of the probate court was contrary to law, and that Ruth Gladys McClenon, decedent's daughter, a necessary party, was not represented at the trial and no judgment of default was entered against her, so that the decree was void as to all defendants. On March 18, 1952, at the express direction of his client, Mr. Travis withdrew the motion for new trial and also his appearance as counsel. The probate court on March 21, 1952 entered a second decree identical with the first except for an additional finding and judgment of default against decedent's daughter. According to the record before us, the defendants represented by Mr. Travis on and prior to March 18 were not represented by any lawyer after that date. Mr. Travis testified as a witness for defendants at the trial in the district court, where his testimony was to the effect that "his clients" informed him they were in accord with the order of the probate court, that they were in agreement with the contentions advanced by the executor and the widow, and that it was not desired that he proceed further with his motion for a new trial. He also testified that the minors, for whom his client as guardian ad litem acted, were the primary residuary legatees under the will.
 
 
 35
 He also testified that, after briefs had been filed in the probate court on behalf of the executor and the widow (these two briefs were in agreement that the federal estate taxes should be paid by the executor and no portion thereof charged to the widow), he was instructed to file a brief. The brief for the widow was given to Mr. Travis on January 9, 1952. He proceeded to prepare his brief. He completed only the first nine pages thereof. In that portion he stated, in effect, that the widow was liable for her contribution to the estate for the full amount of the inheritance taxes payable on property which she received and which is taxable under the terms of the law, and in the district court he testified that, had he been permitted to do so, he would have filed a brief to that effect.
 
 
 36
 He further testified that he never knew that there was a judgment entered in the probate court until after it was entered, that he had never been shown the judgment and had never discussed it with anyone.
 
 
 37
 He further testified that he had originally been retained by Mr. McClenon to represent his two children in the probate court proceedings, and that he advised Mr. McClenon that the interests of his children were adverse to the widow, and the case was tried on that basis.
 
 
 38
 The probate court allowed Travis' law firm compensation for his services and reimbursement for his expenses incurred in procuring a bill of exceptions for use on a possible appeal from the court's decision, as requested in a petition presented to the court.
 
 
 39
 Not only in this court and in the district court did plaintiff contend that the probate court decree was entered as the result of an adversary proceeding and not by consent, but it uniformly made a similar contention in a protest in regard to federal estate taxes filed with the internal revenue agent under date of October 17, 1952 and in a supplemental brief filed in support of said protest.[11]
 
 
 40
 In view of the contentions of both parties made in this court, as well as the statements heretofore made by plaintiff to the internal revenue agent, it is apparent that both sides agree that, if the probate court final decree was entered by consent of the parties or in a nonadversary proceeding, it is not binding upon defendants in this federal estate tax litigation. It is, therefore, unnecessary for us to pass upon the validity of that proposition of law and we are relieved of any obligation to consider and reconcile a number of seemingly conflicting federal courts of appeals cases.[12] The precise question before us is one of fact: Was the entry of the final decree of the probate court, to the extent that it affects federal estate taxes, the result of a genuine contest in an adversary proceeding or was it the result of consent of the parties in a nonadversary proceeding?
 
 
 41
 Although we have hereinbefore referred to a finding of fact made by the district court on this subject, we are not prevented by Rule 52(a) of the Rules of Civil Procedure[13] from overriding that finding if it is clearly erroneous. Most of the evidence received in the district court is documentary. There is no conflict in the oral testimony and no question as to the credibility of witnesses. We are, therefore, not prevented by Rule 52(a) from determining the crucial question of fact presented on this record.
 
 
 42
 It is undoubtedly true that, while attorney Travis was in the probate court proceeding, he presented a genuine defense to plaintiff's complaint. He found on his side of the table another defense counsel, who was a member of the same firm that appeared for plaintiff in that proceeding. The answer which Mr. Travis filed for the guardian ad litem for minor and unborn persons, clearly set forth the law of Indiana, to the same effect as we have set it forth herein. He did not receive the brief of the widow's attorney until January 9, 1952, which was about 2½ months after the trial ended on October 23, 1951. Upon its receipt, Mr. Travis started the preparation of his answering brief but he learned that shortly thereafter a decree in favor of the plaintiff had been entered. To set aside that decree, Mr. Travis, when he learned of its entry, made a motion for a new trial, calling attention to the fact that a necessary defendant, who had been served with process, had not been defaulted and had not been represented by counsel, thus rendering the decree vulnerable. Up to that point the proceeding was genuinely contested by Mr. Travis, and by him only. Until then the intention of all other parties to make it nonadversary was impeded by a conscientious lawyer's loyalty to his client. However, he thereupon was directed by his client to withdraw the motion for a new trial as well as his appearance as counsel, both of which he, of course, did. Then, three days later, the decree which we are now considering was entered. It defaulted the defendant who had theretofore been overlooked, but, in other respects, was a copy of the vacated decree. From the time that Mr. Travis withdrew from the case until the final decree was entered, no lawyer represented the minors or the unborn persons. When the final decree was entered, their resistance, based on the established law of Indiana, had already been smothered and made inoperative. Their attorney, who had made preliminary preparation for an appeal to a higher state court, was by his discharge prevented from perfecting the appeal and, therefore, no appeal was actually taken.
 
 
 43
 On this state of the record, when the decree was entered, it was, according to plaintiff, binding upon the United States of America, although it was not a party to the proceeding and, therefore, plaintiff maintains that federal estate taxes in a substantial amount cannot be collected from plaintiff.
 
 
 44
 On these undisputed facts, we hold that, when the decree relied upon by plaintiff was entered by the probate court, insofar as it affected federal estate tax liability, it was consented to by all parties except two minors and unborn persons, who were incapable of giving consent and who were not then represented by counsel. When the decree was entered the proceeding was undefended and was nonadversary.
 
 
 45
 For the reasons hereinbefore set forth, the judgment from which this appeal was taken is reversed.
 
 
 46
 Judgment reversed.
 
 
 
 Notes:
 
 
 [1]
 While the Marion County Probate Court entered a decree in favor of the taxpayer, that decree is under attack by defendants herein, who contend that that proceeding was for the express purpose of seeking the avoidance of a portion of federal estate taxes due from the estate, and that it cannot be considered an adversary proceeding. The effect of that decree will be hereinafter considered
 
 
 [2]
 26 U.S.C.A. § 812, provides, in part, as follows:
 "§ 812. Net estate
 "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate —
 * * * * *
 "(e) Bequests, etc., to surviving spouse
 "(I) Allowance of marital deduction
 "(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
 * * * * *
 "(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection —
 "(i) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest; and
 * * * * *
 "(3) Definition. For the purposes of this subsection an interest in property shall be considered as passing from the decedent to any person if and only if —
 "(A) such interest is bequeathed or devised to such person by the decedent; or
 "(B) such interest is inherited by such person from the decedent; or
 * * * * *
 "(G) such interest consists of proceeds of insurance upon the life of the decedent receivable by such person. * *"
 
 
 [3]
 In this court there is no dispute as to the correctness of this figure
 
 
 [4]
 No question has been raised as to the mathematical accuracy of the computations which produce these figures
 
 
 [5]
 N.Y.Decedent Estate Law, McKinney's Consol.Laws, c. 13, Laws 1930, Ch. 709, § 124
 This section provides in effect that, except as otherwise directed by decedent's will, the burden of any federal death taxes paid by the executor or administrator shall be spread proportionately among the distributees or beneficiaries of the estate.
 
 
 [6]
 Burns' Indiana Statutes, Ann. (1933 ed.), Vol. 3, § 6-2313 (now § 6-202) provides:
 "Widow. — If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors: Provided, however, That where the real estate exceeds in value ten thousand dollars ($10,000), the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars ($20,000), one-fifth only, as against creditors."
 § 6-2319, (now § 6-301) thereof, provides:
 "Widow's interest in personal estate. — If a man die testate leaving a widow, one-third of his personal estate shall descend to said widow, subject, however, to its proportion of the debts of said decedent: Provided, however, That nothing in this act shall be construed to reduce the interest which the law now gives a widow in the estate of a deceased husband: And provided, further, That such widow may elect to take under the will of said decedent instead of this or any other law of descent of this state, which election shall be made within ninety (90) days after said will has been admitted to probate in this state, and in the same manner as widows are now required by law to elect."
 § 6-2334 (now § 6-303) provides:
 "Election — How made. — Any surviving husband or wife desiring to renounce the provisions made for him or her in any such will shall file his or her election in writing, * * *. In such election, such husband or wife shall state that he or she renounces the provisions made for him or her in such will and that he or she elects to take the interest in such estate that is given to him or her under the laws of descent of the state of Indiana. After making such election, such husband or wife shall receive none of the provisions made for him or her in such will."
 
 
 [7]
 § 6-1301, Burns' Statutes of Indiana, 1933
 "[U]nless otherwise provided in this act, the debts and liabilities of a decedent, shall, if his estate be solvent, be paid in the following order of classes:
 "First. The expenses of administration.
 "Second. The expenses of the funeral of the deceased.
 "Third. The expenses of his last sickness.
 "Fourth. Taxes accrued upon the real and personal estate of the deceased at his death, and taxes assessed upon the personal estate during the course of the administration.
 "Fifth. Debts secured by liens upon the personal and real estate of the decedent, * * *
 "Sixth. A sum not exceeding fifty dollars ($50.00) for wages due any employee for work and labor performed for the decedent within two (2) months prior to this death."
 
 
 [8]
 While we might have differently interpreted the limited language of the Indiana act describing the kind of taxes therein referred to (especially in view of the historical fact that it was enacted in 1881, when estate and inheritance taxes were unknown), we have no right to do so and, therefore, we accept the meaning given to the act by the Indiana court. The Indiana legislature cleared up this matter in 1953 by substituting for § 6-1301, a revision known as "§ 7-809" Burns' Indiana Statutes 1953 replacement. Paragraph 4 thereof reads as follows:
 "All debts and taxes having preference under the laws of the United States."
 
 
 [9]
 Both parties have discussed Pearcy v. Citizens Bk. & Tr. Co., 121 Ind.App. 136, 96 N.E.2d 918, rehearing denied, 121 Ind. App. 158, 98 N.E.2d 231. We have carefully examined that case and find that it is consistent with the views herein expressed
 
 
 [10]
 The widow's brief agreed with the executor's contentions and disputed the arguments made by Mr. Travis on behalf of the guardian ad litem
 
 
 [11]
 A. In the protest it said:
 "Said judgment of Marion County Probate Court is binding on the Commissioner of Internal Revenue.
 "The United States Supreme Court has held at least twice that the Commissioner of Internal Revenue is bound by valid decisions of state courts in the absence of fraud or collusion. * * *
 "A judgment obtained by fraud, collusion, or agreement, does not come within the rule which has been clearly established by the cases cited above."
 Plaintiff, in said protest, also said:
 "The proceeding was adverse not only in form but in fact. * * * Thus the record amply discloses the impossibility of collusion, consent, or agreement, * * *."
 In the protest it also stated:
 "* * * Said judgment of Marion County Probate Court has established the law of the case, the time for appeal has now lapsed * * *."
 B. In the supplemental brief plaintiff contended:
 "* * * Under Indiana law, it cannot be maintained that the will, as construed by the court in a bona fide adversary proceeding, is not controlling."
 And likewise,
 "* * * the Marion Probate Court in a bona fide adversary proceeding considered the Pearcy case [Pearcy v. Citizens Bk. & Tr. Co., 121 Ind.App. 136, 96 N.E. 2d 918] and held it irrelevant to the facts of the Street case."
 It further contended:
 "* * * In the face of a decision by the Marion Probate Court which establishes this as the law of Indiana, following a bona fide adversary proceeding, it simply cannot be reasonably maintained that such was not the law of Indiana, * * *."
 
 
 [12]
 Pitts v. Hamrick, 4 Cir., 228 F.2d 486; Brodrick v. Gore, 10 Cir., 224 F.2d 892; Gallagher v. Smith, 3 Cir., 223 F.2d 218; Wolfsen v. Smith, 9 Cir., 223 F.2d 111; Newman v. C. I. R., 9 Cir., 222 F.2d 131; Channing v. Hassett, 1 Cir., 200 F.2d 514; Saulsbury v. U. S., 5 Cir., 199 F. 2d 578; Falk v. C. I. R., 3 Cir., 189 F.2d 806; Burton v. Bowers, 4 Cir., 172 F.2d 429; Daine v. C. I. R., 2 Cir., 168 F.2d 449, 4 A.L.R.2d 248; Loggie v. Thomas, 5 Cir., 152 F.2d 636; Sewell v. C. I. R., 5 Cir., 151 F.2d 765; Doll v. C. I. R., 8 Cir., 149 F.2d 239; Eisenmenger v. C. I. R., 8 Cir., 145 F.2d 103, 156 A.L.R. 741; Nashville Trust Co. v. C. I. R., 6 Cir., 136 F.2d 148; Plunkett v. C. I. R., 1 Cir., 118 F.2d 644; Helvering v. Rhodes Estate, 8 Cir., 117 F.2d 509; First-Mechanics Nat. Bank of Trenton v. C. I. R., 3 Cir., 117 F.2d 127, 132 A.L.R. 1459; Robbins v. C. I. R., 1 Cir., 111 F.2d 828; Brainard v. C. I. R., 7 Cir., 91 F.2d 880
 Cf. Morgan v. C. I. R., 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Sharp v. C. I. R., 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087, reversing 3 Cir., 91 F.2d 802; Blair v. C. I. R., 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634.
 
 
 [13]
 28 U.S.C.A. Rule 52(a)