WILL OF UIHLEIN: UIHLEIN (Henry) and others, vs. UIHLEIN (Frances L.) and others.

*June 1—July 3, 1953.*

364

For Henry Uihlein, H. Robert Stoepel, Helen Rohnert Stoepel, and L. James Bulkley there were briefs by *Dickinson, Wright, Davis, McKean & Cudlip* of Detroit, Michigan, attorneys, and *John G. Garlinghouse* and *Edward L. Weber* of Detroit, Michigan, and *Steinmetz & Steinmetz* of Milwaukee, of counsel, and oral argument by *Mr. Garlinghouse, Mr. Weber,* and *Mr. C. R. Steinmetz.*

For Frances L. Uihlein there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles, Maxwell H. Herriott,* and *Richard R. Teschner* of counsel, all of Milwaukee, and oral argument by *Mr. Louis Quarles, Mr. Herriott,* and *Mr. Teschner.*

For Evelyn McIntosh Uihlein and the Guaranty Trust Company of New York there was a brief by *Weidner & Lemke* of Milwaukee, attorneys, and *Henry, Rehor & Wenzel* of Bay Shore, New York, of counsel.

For Herbert C. Hirschboeck, guardian *ad litem,* there were briefs and oral argument by *Mr. Hirschboeck, in pro. per.*

CURRIE, J. These appeals raise the following issues:

(1) Is the widow who has elected to take her one-third share of the estate, pursuant to sec. 233.14, Stats., entitled to such share without deduction therefrom of any portion of the federal estate tax?

(2) Does the widow's election to take under the law extinguish the special power given to the widow under the will to appoint the residue of the estate upon her death among the nieces and nephews of the deceased, their descendants, and certain charities?

(3) Does the widow's election to take under the law have the same effect as her death and thereby accelerate the distribution of the remaining estate to the persons named as takers, in default of the exercise of the power of appointment, in the proportions provided in the testator's will?

(4) Inasmuch as the testator failed to dispose of one tenth of the residue of the estate (less $10,000), how is such one tenth (less $10,000) to be assigned in making final distribution of the estate?

(5) Is the widow, who has elected to take under the law, in addition to receiving her homestead rights in the homestead and one third of the personal estate, also entitled as sole heir at law and next of kin of the decedent to share in any intestate property of the deceased?

### Impact of Federal Estate Tax

While technically the "gross estate" of the deceased is all of the assets before any deduction for administration expenses, debts, allowances for support, and federal estate tax, we will, for purposes of simplicity of nomenclature in this opinion, designate that part of the total estate remaining after deduction of expenses, debts, and allowances as the "gross estate;" while the term "net estate" will be used to refer to that part of the estate which remains after deduction of the federal estate tax, as well as expenses, debts, and allowances.

The impact of the federal estate tax directly affects the amounts distributable to the widow and other beneficiaries. The trial court determined that the widow's share of the personal estate which she is to receive, by reason of her election to take under the law and not under the will, is one third of the gross estate. The result of this is that none of the impact of the federal estate tax falls upon the widow's share of the personal estate. On the other hand, the guardian *ad litem* and counsel for beneficiaries other than the widow contend that the widow's share of the personal estate should be determined upon the net estate and not the gross estate.

The difference in result of computing the widow's share of the personal estate under each of these two methods is well illustrated by the following table:

|  | Widow's share determined on net-estate basis | Widow's share determined on gross-estate basis |
|---|---|---|
| Gross estate .............. | $7,078,600 | $7,078,600 |
| Debts, expenses, family allowance ................. | 265,000 | 265,000 |
| Adjusted gross estate.,...... | 6,813,600 | 6,813,600 |
| *Homestead real estate...... | 60,000 | 60,000 |
| Net personal estate before deducting federal estate tax | 6,753,600 | 6,753,600 |
| Federal estate tax.......... | 2,361,038 | ........ |
| Net personal estate......... | 4,392,562 | 6,753,600 |
| Widow's one third......... | 1,464,187 | 2,251,200 |
| Other beneficiaries ......... | 2,928,375 | 4,502,400 |
| Federal estate tax.......... | ........ | 1,947,315 |
| Net to beneficiaries other than widow ............... | 2,928,375 | 2,555,085 |

*Note: The widow's interest in the homestead is terminable and does not qualify for marital deduction.

The learned trial judge in his memorandum opinion advanced two reasons for relieving the widow's share of the personal estate from all impact of the federal estate tax, viz., (1) that the history of the federal legislation which resulted in the allowance of the marital deduction in determining federal estate tax indicated an intention on the part of congress that a widow's share qualifying for such marital deduction should be free from the impact of the federal estate tax; and (2) the recent decision of the Ohio supreme court in *Miller v. Hammond* (1952), 156 Ohio St. 475, 104 N. E. (2d) 9.

Sec. 812 (e) (1) (E) of the Internal Revenue Code (26 USCA) provides in part as follows:

"(E) *Valuation of interest passing to surviving spouse.* In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

"(i) *there shall be taken into account the effect which a tax imposed by this chapter,* or any estate, succession, legacy, or inheritance tax, *has upon the net value to the surviving spouse of such interest;* . . ." (Italics supplied.)

Thus the Internal Revenue Code expressly provides that in computing the value of the interest of a surviving spouse for purposes of the marital deduction in determining the federal estate tax there is to be taken into account the impact of any part of the federal estate tax which falls upon such interest of the surviving spouse. This provision of the federal estate-tax statutes thus would seem to expressly negative any intent on the part of congress that the widow's share of the personal estate in the instant case should entirely escape the impact of all of the federal estate tax.

Furthermore, the United States supreme court in *Riggs v. Del Drago* (1942), 317 U. S. 95, 97, 98, 63 Sup. Ct. 109, 87 L. Ed. 106, 142 A. L. R. 1131, stated:

"We are of opinion that congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax; . . .

"Its legislative history indicates clearly that congress did not contemplate that the government would be interested in the distribution of the estate after the tax was paid, and that congress intended that state law should determine the ultimate thrust of the tax."

While the marital deduction provisions of the federal estate-tax law did not come into being until 1948, there is nothing contained in the 1948 amendments to the federal estate-tax law which would render inapplicable the rule laid down in *Riggs v. Del Drago, supra.* Furthermore, U. S. Treasury Regulations 105, sec. 81.47 (c) clearly recognize that local state law is determinative of the question of whether the widow's one-third share of the personal estate in the

instant case, is, or is not, subject to the impact of any of the federal estate tax.

Some states, notably New York, have enacted apportionment-of-federal-estate-tax statutes which specifically provide how the federal estate tax is to be apportioned among various beneficiaries of the estate where the deceased has not directed otherwise by his will. However, no apportionment statute has as yet been enacted in Wisconsin. The appellate courts of several states which are in the identical position of Wisconsin (in that they have no apportionment statute such as the New York statute) have passed upon the question confronting us on this appeal. Kentucky and Ohio reached one result, while North Carolina and Illinois arrived at the opposite conclusion.

The widow of decedent in the case of *Lincoln Bank & Trust Co. v. Huber* (Ky. 1951), 240 S. W. (2d) 89, 91, elected to take under the law rather than under the will and the question presented before the Kentucky court of appeals was whether any of the impact of the federal estate tax should fall upon the widow's share. The court determined that the widow should receive her share free and clear of any portion of the federal estate tax. The court arrived at this result on the ground that it was the apparent purpose behind the enactment by congress of sec. 812 (e) of the Internal Revenue Code (26 USCA) in 1948 providing for the marital deduction in computing federal estate tax, "to equalize the estate tax in noncommunity-property states with that of community-property states, and to prepare the way for elimination from the tax burden [of] all those whose legacies or allotments do not create or add to the tax." The Kentucky court also cited the decision of a New York surrogate court (*In re Peters' Will* (1949), 88 N. Y. Supp. (2d) 142, 147) which stated that the marital deduction was in the same category as is the deduction allowed for charitable bequests, and that inasmuch as charitable bequests are free from fed-

eral estate tax so should property going to a widow qualifying for the marital deduction. The Kentucky court invoked its equity powers to apportion the federal estate tax so that none of it fell upon the widow's share.

The reasons advanced by the Kentucky court for its decision in *Lincoln Bank & Trust Co. v. Huber, supra,* are demonstrably untenable. While the motivating purpose of congress in creating the marital deduction was undoubtedly to give noncommunity-property states the same estate-tax advantages that community-property states have, congress made it very clear by the provisions of sec. 812 (e) (1) (E) of the Internal Revenue Code (26 USCA) that a spouse's share qualifying for marital deduction might still be subject to federal estate tax. The treasury regulations issued to implement such section are proof of the fact that the rule of *Riggs v. Del Drago, supra,* still stands. In other words, congress expressly left the question, of whether a spouse's share of an estate qualifying for marital deduction should be subject to federal estate tax, to the individual states to determine for themselves. The statement quoted from the New York surrogate court decision, implying that all charitable bequests are exempt from the burdens of federal estate tax, is simply not so in the absence of a state apportionment statute so providing. Whether charitable bequests are exempt from the burdens of federal estate tax is dependent upon whether the bequests take the form of a specific legacy or a share in the residue. If a bequest to charity is payable from the residue, it bears the impact of the federal estate tax. *Young Men's Christian Asso. v. Davis* (1924), 264 U. S. 47, 44 Sup. Ct. 291, 68 L. Ed. 558.

The Ohio supreme court in *Miller v. Hammond, supra,* in passing on the question of whether the share of a widow, who elects to take under the law instead of under a will, which qualifies for marital deduction for federal estate-tax purposes is subject to any portion of the federal estate tax, reached the

same result as did the Kentucky court. In fact, the Ohio court largely relied upon the decision in the *Lincoln Bank & Trust Co. v. Huber, supra.* In speaking of the latter decision, the Ohio court stated, page 495 : "That case is also authority for the recognition of the common-law rule that courts may make such apportionments [of federal estate tax] in the exercise of their equity powers." The reason advanced by the court for invoking such equity powers in relieving the widow's share from federal estate tax is stated as follows (156 Ohio St. 496, 104 N. E. (2d) 19) :

"In this case the widow being entitled to one third of the decedent's estate will receive less than the maximum marital deduction authorized by the Internal Revenue Act and, therefore, no federal estate tax is deductible from her portion of the estate."

This court in *Will of Kootz* (1938), 228 Wis. 306, 280 N. W. 672, rejected the theory that our court should invoke its equity powers to achieve an apportionment of federal estate taxes which would prevent inequities. At page 313 of that decision the court considers an example of a man having ten sons and leaving an estate of $1,000,000 whereby $100,000 is conveyed to each of nine sons, and the residue to the tenth. It is conceded under such example that the federal estate tax would wipe out the residuary share of the tenth son, but the court points out that such inequity is created by operation of federal law and not by state law, and that the testator could obviate such inequitable result by making proper provisions in his will.

The North Carolina court in *Wachovia Bank & Trust Co. v. Green,* 236 N. C. 654, 73 S. E. (2d) 879 (decided January 6, 1953), had the same question before it that we have here, *i. e.,* whether the share of a widow who elected to take under the law instead of under the will is subject to any of the federal estate taxes payable by the estate. The applicable North Carolina statute provides that where a widow elects to

take under the law her one-half share is distributable out of *"the surplus"* of the estate. The North Carolina court determined that the word *"surplus"* means that which remains of the estate after payment of "all expenses of administration and debts including taxes." The court also pointed out (p. 659) that the United States supreme court has repeatedly declared that the federal government is "concerned only with the collection of the tax, leaving it to the states to determine how the burden shall be distributed and upon whom the impact shall fall." The decision of the Kentucky court in *Lincoln Bank & Trust Co. v. Huber, supra,* was also considered but the North Carolina court refused to adopt the doctrine of that case, that the courts have the power without the aid of an apportionment statute to make an equitable apportionment of federal estate tax, and declared (p. 659) :

*"The public policy of the state is a matter for the legislative branch of the government and not for the courts.* Whether any change should be made in the manner of distribution to the widow of her interest in the estate of her husband, in view of the provision for marital deduction contained in the federal statute, is a matter for the general assembly." (Emphasis supplied.)

Illinois has reached the same result in *Northern Trust Co. v. Wilson* (1951), 344 Ill. App. 508, 101 N. E. (2d) 604, as did North Carolina. The Illinois statute provides that where a widow renounces her right to take under a will her share in the estate is determined "after payment of all just claims." The Illinois court considered that the federal estate tax constituted a "just claim," the same as a debt, and therefore the federal estate tax must be deducted before apportioning the renouncing widow's share. It quoted with approval from the earlier Illinois case of *First Nat. Bank of Chicago v. Hart* (1943), 383 Ill. 489, 497, 50 N. E. (2d) 461, 464, wherein it was declared:

"In the absence of statutory enactment directing otherwise, the federal tax must be considered as a charge against the whole of the estate and not against the individual shares (*Riggs v. Del Drago,* 317 U. S. 95) [63 S. Ct. 109, 87 L. Ed. 106], unless otherwise specifically directed by the testator."

The material part of sec. 233.14, Stats., which governs the method of computing the share of the widow in the instant case, who elected to take under the law and not under the will, reads as follows:

". . . provided, that when he shall have died testate the share of personal estate which she may so take shall not exceed the *one-third part of his net personal estate, . . . .*" (Italics supplied.)

It seems to us that the words *"net estate"* of our statute are clear and unambiguous and are subject to no other interpretation than that they mean that part of the estate which remains after payment of all charges against the entire estate. Federal estate taxes stand in no different category than do debts or administration expenses. We deem that it would be unwarranted judicial legislation for this court to attempt to apportion the impact of the federal estate tax as did the Kentucky and Ohio courts. The legislature has the power to enact an apportionment of federal estate-tax statute providing for a different method of bearing the impact of federal estate taxes if it should determine the same desirable. However, three general sessions of the legislature have been held since congress amended the federal estate-tax statute so as to provide for the marital deduction, and to date our legislature has not seen fit to adopt such apportionment statute.

Counsel for the widow, Frances L. Uihlein, contend, that because the testator included in his will a direction that all estate and inheritance taxes should be paid from the residue of his estate, this amounted to a direct provision by the testator that the burden of the federal estate tax should fall upon

the remaindermen taking the residue, and not upon the widow, who has elected to take under the law. They urge that the word *"residue"* in clause Fifth of the will means that part of the estate which remains after the widow's share, which she takes under the law by reason of her election, has been deducted. In support of this last contention they rely on our decision in *Will of Reynolds* (1912), 151 Wis. 375, 138 N. W. 1019. Headnote 3 of that case states in part as follows:

"Where the widow so renounces, the 'residue' of the estate consists of the part of the general estate that remains after deducting debts, specific legacies, and the widow's share."

On its face such quoted statement would seem to support the contention made in behalf of the widow. The court, however, in the *Reynolds Case* was not confronted with the problem of the impact of federal estate tax, but only as to determining what part of the estate passed under the residuary clause where the widow, who had renounced the will, was bequeathed 30 per cent of such residue. The gist of our decision in the *Reynolds Case* was that the election of the widow to take under the law does not defeat the intended disposition of the testator of his other property, and those provisions of the will, which do not operate for the benefit of the widow, are not affected by such election. However, by following the construction contended for by counsel for the widow, the widow would stand to benefit by the clause of the will which provided for the payment of federal estate taxes out of the residue. If the widow had not renounced the will by her election she would have taken under the residuary clause after deduction of the federal estate tax, and she ought not to be placed in a more advantageous position, in so far as the impact of such tax is concerned, by such election. In electing to take under the law she is not entitled to claim the benefit of the provision directing payment of federal estate taxes out

of the residue. Such clause of the will remains effective as between the recipients of specific legacies and the remaindermen who take the residue, but the widow's renunciation of the will prevents such clause from being operative so as to relieve her share from the impact of the federal estate tax.

Therefore, it is our conclusion that that part of the interlocutory judgment (conclusion of law No. 1), which provides that the widow, Frances L. Uihlein, is entitled to her one-third share, pursuant to sec. 233.14, Stats., without deduction therefrom of the federal estate tax, must be reversed, and the cause remanded in order that the interlocutory judgment may be amended by the trial court so that it is consistent with this opinion.

### EXTINGUISHMENT OF POWER OF APPOINTMENT AND ACCELERATION OF PAYMENT OF REMAINDERMEN'S INTERESTS

The question of whether the election by the widow to take under the law accelerated payment of the remaindermen's interest is so closely intertwined with the question of whether such election by the widow extinguishes the special power of appointment that these two questions will be considered together.

Counsel for the adult remaindermen named by testator to share the residue of the estate bequeathed in trust upon the death of the widow, in the event she fails to exercise her special power of appointment, in claiming that acceleration of payment to such remaindermen has resulted from the widow's rejection of the will, rely upon the following general principle stated in 4 Page, Wills (lifetime ed.), p. 89, sec. 1390:

"Where the enjoyment of possession by the remainderman is postponed until after the determination of the particular estate and for no other purpose, and such tenant elects to take against the will, the remainderman enters into enjoyment at once. This principle is called acceleration of the re-

mainders. Renunciation by the particular tenant is said to be equivalent to his death with reference to the remainder's taking effect in possession."

However, there is an exception to such general principle as is well pointed out by this court in its opinion in *Will of McIlhattan* (1927), 194 Wis. 113, 117, 216 N. W. 130, as follows:

"It is a general rule of law that the election of the widow has the same effect as her death, and accelerates the remainders so that the beneficiaries enter directly into enjoyment thereof. [Citing authorities.] *This general rule of law does not apply if the terms of the trust expressly otherwise provide; that is, the intent of the testator must prevail if that intent is manifest from the will itself."* (Emphasis supplied.)

The crucial questions on this issue of acceleration are therefore: (1) Did the granting of the special power of appointment to the widow evidence an intent of the testator that the trust so far as it affected the remaindermen should continue until the widow's death; and (2) did the election by the widow extinguish such power?

The learned trial judge in his memorandum opinion dealt with these two questions as follows:

"What testator's intention would have been had he contemplated the wife's election to take against the will no court can ascertain from the provisions of the will before us. Any attempt to do so would be pure guesswork. To hold that testator intended that the trusts were to terminate and the wife's power of appointment to distribute said trusts as he designated were destroyed by her election to take under the law we believe would be indulging in such guesswork. The testator appears to have had confidence in his wife's judgment and clearly indicated his willingness to have her distribute the proceeds of said trusts by her will in accordance with her judgment and discretion within the limitations he had prescribed. The discretionary power granted the wife we believe is an important factor, indicating a desire that the

trusts should be established and to terminate upon her death. The fact that the widow renounced the benefits the will conferred upon her does not disturb the will except as to the particular provisions intended for her, particularly in a case where the testator's intentions are so clearly expressed. We do not believe that the power of appointment granted to the widow and her authority to distribute the proceeds of the trusts in accordance with the limitations expressed in testator's will, is a benefit to the widow which she surrendered by her election to take under the law. Neither the widow nor her heirs receive any benefits upon termination of the trusts. The trusts terminate upon her death. She does have a specific power of appointment to distribute the trusts by her will but only within the expressed limitations as stipulated in her husband's will. Our court has held in *Will of Reynolds,* 151 Wis. 375, that the fact that the widow renounced the benefits conferred upon her does not disturb the will except in the particular provisions intended for her and cannot operate to defeat the intended disposition of his other property unless her renunciation necessarily interferes therewith . . . 'while the widow's renunciation may affect the quantity of the residue it cannot affect his disposition thereof and it must be held by the trustees for the purpose of distribution among the beneficiaries designated.' "

For these reasons the trial court concluded that there was no acceleration of the remaindermen interests and that the election of the widow to take under the law did not extinguish the power of appointment. We fully concur in both the reasoning and the conclusion of the learned trial court.

The power of appointment given by testator's will to the widow to appoint the residue of the trust estate to nephews and nieces, their descendants, and to charities (to a limited extent) clearly constituted à special power in trust under the definition of such a power contained in sec. 232.22, Stats., which provides:

"A special power is in trust:
"(1) When the disposition which it authorizes is limited

to be made to any particular persons other than the grantee of such power.

"(2) When any person or class of persons, other than the grantee, is entitled to any benefit from the disposition or charge authorized by the power."

Counsel for the named remaindermen cite Restatement, 1 Trusts, p. 89, sec. 27, as authority establishing that the power of appointment in this instance was not a special power in trust. However, the provisions of sec. 232.22, Stats., of course, are controlling on this issue, because where there is a conflict between our statutes and the Restatement, our own statutory provisions must govern.

In *Ruggles v. Tyson* (1899), 104 Wis. 500, 502, 79 N. W. 766, the property was held in trust for the sole use of the grantor's daughter for her life ". . . with power to distribute the same by her last will, in her discretion, to her children living at her death and the children of her deceased children, and remainder to such children in case of her failure to exercise the power. . . ." If the daughter died without leaving children or grandchildren, the remainder would pass to the daughter's mother for life with remainder over to the grantor's heirs at law. This court approved the sale of some of the property to preserve the remainder from taxes and other liens thereon, but in its opinion written by Mr. Justice MARSHALL noted (p. 510):

"Just what, from an equitable and business standpoint, looking only to the purpose to be conserved, should be done under the circumstances of this case, is by no means clear; but it is plain that nothing should be done *for the purpose of a present distribution and* enjoyment of the property, since it was designed to be kept *in solido* till the time for distribution fixed by plaintiff's father." (Emphasis supplied.)

In its opinion on rehearing in the *Ruggles Case,* this court stated (pp. 517, 521):

". . . it is firmly established, both at common law and by statute, that a *special power,* to be executed by will, cannot be executed in any other way, *or be released or extinguished so as to cut off a taker not participating in the extinguishment and who is entitled to take in case the power be not executed in the manner provided by the donor of the power.*
. . .

". . . plaintiff has but a life estate, coupled with a power of appointment by will to say how the estate in remainder shall be divided between her surviving children in whom the immediate estate in remainder is vested, in case she leaves surviving children, such children to take equally if the donee of the power fails to execute it, and the estate to go over to others specified by the settlor in case of there being none of the immediate remaindermen to take. *While that is a special discretionary power which, by the rules of the common law, may be separated from the life estate,* the settlor having failed to provide clearly to the contrary, or extinguished as to any person interested by a conveyance by such person or by a joint conveyance by such person and the life tenant to another (Lewin, Trusts (10th ed.), 725; Pingrey, Real Prop. sec. 1124; 2 Washburn, Real Prop. 308, 309), *it cannot be extinguished so as to cut off persons not participating, or executed at any other time or in any other manner than that indicated by the settlor.* When authority to execute a power by will is given, it is exclusive, by the rules of the common law as well as by statute. Pingrey, Real Prop. sec. 1118; 1 Lewin, Trusts (ed. 1888), *616; 2 Perry, Trusts, sec. 511*b*; sec. 2146, Stats. 1898." (Now sec. 232.46, Stats., quoted above.) (Emphasis supplied.)

Sec. 232.46, Stats., cited in the foregoing quotation from the *Ruggles Case* provides that ". . . the intentions of the grantor of a power as to the mode, time, and conditions of its execution shall be observed, . . ."

Upon the authority of the *Ruggles Case* and the provisions of sec. 232.46, Stats., we are satisfied that the election of the widow, Frances L. Uihlein, to take under the law and not under the will, did not extinguish the power of appointment. Furthermore, even if she had intentionally desired to release

such special power in trust, she could not legally do so. Sec. 232.495 specifies how powers of appointment, which may be exercised in favor of the grantee of the power (which is not possible in the instant case), may be released. It is clear that nothing contained in sec. 232.495 has any application to the release of the instant special power in trust, unless it be sub. (4) thereof, which provides:

"Nothing herein contained shall be deemed to prevent the release of any power which was releasable, in whole or in part, prior to July 15, 1943."

However, inasmuch as the *Ruggles Case* was decided prior to July 15, 1943, the instant special power in trust was not one which was releasable by the grantee of the power prior to July 15, 1943. For an annotation on the releasability of powers of appointment see 76 A. L. R. 1430.

The interlocutory judgment of the trial court directs:

"That the balance of the residue of the estate of said decedent after the assignment of the widow's share pursuant to her election and the statutes providing therefor, and including, subject to chs. 233 and 237 of the Wisconsin statutes, the residuary interest in the homestead after the *life interest* therein of said widow, shall be assigned to the trustees provided in said decedent's will to be held in trust during the life of said widow pursuant to the provisions of said decedent's will, to accumulate the income thereof during her life, and upon her death to distribute the principal and accumulated income thereof on her death to the persons named in said decedent's will in the portions enumerated subject, however, to the provisions of the power of appointment granted to said widow by said will." (Italics supplied.)

The result so reached by the trial court we believe to be a necessary corollary of the holding that there is no acceleration in the payment of the remaindermen's interests and that the special power of appointment in trust vested in the widow was not extinguished by her election to take under the law. However, it is inaccurate to refer to the widow's interest in

the homestead as a *"life interest,"* because it would be extinguished if she should remarry. Therefore, the afore-quoted portion of the judgment should be modified so as to substitute the words *"homestead rights"* in lieu of *"life interest."*

### ASSIGNMENT OF PORTION OF RESIDUE NOT SPECIFICALLY BEQUEATHED BY TESTATOR

Under testator's will one fifth of the residue was bequeathed to each of the following four named persons: Henry Uihlein, H. Robert Stoepel, Helen Rohnert Stoepel, and L. James Bulkley, and one tenth to John H. Kopmeier, effective upon the widow's death and subject to the condition that the widow did not exercise her power to appoint otherwise. No specific provision was made by the testator for the disposition of the remaining one-tenth share of the residue in the event the widow failed to exercise her special power of appointment, except $10,000 of such remaining one tenth bequeathed to Hugh McMillan, Sr., in trust for his two children.

The trial court in the interlocutory judgment determined that such remaining one-tenth portion of the residue (less $10,000) should "be distributed among the persons specifically named in said will [the remaindermen] proportionately to their respective parts as are therein now designated" in the event the widow failed to otherwise appoint under her special power of appointment. We believe that this determination by the trial court was erroneous and that the provisions of sec. 232.27, Stats., are controlling. This statute provides as follows:

"If the trustee of a power with the right of selection shall die, leaving the power unexecuted, its execution shall be adjudged in the circuit court for the benefit equally of all the persons designated as objects of the trusts."

This court in its decision in *Cawker v. Dreutzer* (1928), 197 Wis. 98, 221 N. W. 401, held that the provisions of

ch. 232, Stats., apply to personal property as well as real estate. Inasmuch as we have construed the power of appointment given to the widow to be a special power in trust, the provisions of sec. 232.27, Stats., require that the circuit court exercise the power for the equal benefit of all persons in the class to whom the widow might appoint the remaining one tenth of the residue (less $10,000) in the event she should fail to exercise the power. Such class for whom the power might be exercised consists of the remaindermen named in subparagraph (c) of clause Fifth of testator's will, together with the remaining nephews and nieces of the deceased, and their descendants, living at the time of the death of the widow, and St. Mary's Hospital of Milwaukee, Wisconsin, subject to the provision that the hospital shall not receive more than one twentieth of the residue. However, as the trial court well pointed out in his memorandum opinion, the contingency of the widow failing to exercise her power of appointment is one which is unlikely to happen.

That part of the interlocutory judgment (conclusion of law No. 3 thereof) which provides for the disposition of the one-tenth share in the residue (less $10,000) which the testator did not dispose of in the event the widow fails to exercise her power of appointment as to the same, must be reversed.

## WIDOW SHARING IN INTESTATE PROPERTY

Counsel for the widow contend that there are certain parts of testator's estate which descend as intestate property, and, inasmuch as the widow constitutes his only heir at law and next of kin, she takes such intestate property. It is maintained that such intestate property consists of the following:

(1) The remainder interest in the homestead remaining after assignment to the widow of her homestead rights therein by reason of her election to take under the law;

(2) The one-tenth interest (less $10,000) in the residue not specifically bequeathed by testator; and

(3) The lapse of the bequest to the widow of an interest in the residue, i. e., payments of $5,000 per month from the trusts, causes the right to the income from said trusts to descend as intestate property, there being no direction to the contrary in testator's will.

The contention of counsel for the widow with respect to the remainder interest of the homestead descending as intestate property is untenable. A specific bequest or devise which lapses thereby passes under the residuary clause of the will and constitutes part of the residue. *Harrington v. Pier* (1900), 105 Wis. 485, 82 N. W. 345, and *Estate of Schefe* (1952), 261 Wis. 113, 52 N. W. (2d) 375.

The contention with respect to the widow sharing in the one-tenth portion of the residue (less $10,000) not specifically bequeathed by testator has already been negatived by our holding that sec. 232.27, Stats., controls the disposition of such portion of the residue in the event the widow fails to exercise her special power of appointment in trust.

The contention that the widow is entitled to the income of the trusts as intestate property, pending the distribution of the residue upon her death to the remaindermen, presents a question which has never been directly determined by this court. Such question is whether a widow who elects to take under the law can also share in the distribution of any intestate property as heir at law, or next of kin, of the deceased. In the cases of *Hardy v. Scales* (1882), 54 Wis. 452, 11 N. W. 590, and *Chapman v. Chapman* (1906), 128 Wis. 413, 107 N. W. 668, we were confronted with the reverse of this problem, viz., whether a widow could share in intestate property who elected to take under the provisions of the will made for her benefit by her deceased husband. This court therein held that the sharing under the will and the sharing in intestate property were mutually exclusive under our statutes, and denied the right of the widow who took under the will to share in any intestate property.

Counsel for the widow, Frances L. Uihlein, cite the decision in *Will of McIlhattan* (1929), 198 Wis. 518, 224 N. W. 713, as holding that a widow who elects to take under the law, and not under the will, is entitled to have assigned to her, as the sole heir at law of her deceased husband, intestate real estate not disposed of by the will of decedent. The will of the deceased husband is to be found on pages 114 and 115 of 194 Wis. 113, constituting part of the statement of facts on the prior appeal to this court. It will be noted in examining this will that while there was a residuary bequest of personal property, there was no residuary bequest of real estate. On such second appeal the question was whether a one-half-acre tract of land was devised under the will to the devisee, Teresa Amy Kolman, or whether it constituted intestate property. The adversary parties on the appeal were the widow, as administratrix with the will annexed, and Teresa Amy Kolman. It does not appear from the summary of the record contained in the printed cases in the two appeals who constituted the heirs at law of the deceased who would be entitled to such tract, if the widow were barred, by her election renouncing the will, from taking the intestate real estate, except that the deceased was survived by at least one brother. On the second appeal this court held that it did not have sufficient facts to determine whether the one-half-acre tract was included in the devise to Teresa Amy Kolman, or was left undisposed of by the will and therefore passed as intestate real estate, and therefore the cause was remanded to the trial court for further proceedings. We have examined the printed briefs on the second appeal, and find that counsel for Teresa Amy Kolman raised no issue questioning the widow's right to take the one-half-acre tract in the event it was determined that Teresa Amy Kolman was not entitled to the same as specific devisee. Strangely enough, counsel for the widow, as administratrix, cited both *Hardy v. Scales,*

*supra*, and *Chapman v. Chapman, supra,* in his brief as authorities in support of the widow's contention!

The foregoing analysis of the case of *Will of McIlhattan* (1929), 198 Wis. 518, 224 N. W. 713, discloses that the particular question confronting us on this appeal, *i. e.,* whether a widow who elects to take under the law is also entitled to have assigned to her as sole heir at law and next of kin of the deceased any intestate property left undisposed of by the will, was not presented to this court at all nor directly passed upon by the court. We therefore do not consider that such case has any weight whatever as authority one way or the other on the issue we are now considering.

Ronald D. Keberle in a note in 1950 Wisconsin Law Review, 182, comes to the conclusion that the reasoning underlying the decisions in the *Hardy v. Scales* and *Chapman v. Chapman Cases, supra,* would be followed by this court if it ever were confronted with the problem of whether a widow electing to take under the law, and not under the will, could share also in any part of the estate of the testator left undisposed of by his will as the heir at law or next of kin of the deceased husband. We agree with Mr. Keberle's conclusion as we deem it to have been the intention of the legislature, that where a widow elects to take under the law and not under the will, she thereby takes her share in the entire estate (not merely the estate disposed of by will) as the result of such election, and is not entitled to participate further in the estate. Furthermore, in the instant case the testator did by his will make disposition of the income of the trusts during the widow's lifetime, and such disposition was rendered ineffective only by the election of the widow renouncing the will. It would seem to be a highly illogical result that a widow, whose own act of renouncing the provision made for her benefit by the testator in the will, in addition to receiving the portion of the entire estate due her by her election to take under the law, could also share to a still further extent

in that portion of the estate which was rendered intestate by such election on her part.

It is therefore our conclusion that the share of the testator's estate to which a widow becomes entitled, as a result of electing to take under the law and not under the will of her deceased husband, is exclusive, and that she does not take any additional share in any remaining portion of the estate which may be left undisposed of by the will, even though she be the sole heir at law and next of kin of the deceased.

*By the Court.*—Conclusion of law No. 2 of the judgment appealed from is modified so as to substitute the words "homestead rights" for the words "life interest," and as so modified is affirmed; conclusions of law Nos. 1 and 3 of the judgment appealed from are reversed, and the cause remanded for further proceedings consistent with this opinion.