ESTATE OF James F. SHEPPARD,
by its Co-Personal Representative,
Michael E. McMorrow,
Plaintiff-Appellant,†

v.

Jessica SCHLEIS, James Schleis,
Mary Jo Schleis and
XYZ Financial Institutions,
Defendants-Respondents.

Supreme Court

*No. 2009AP1021. Oral argument February 11, 2010.
—Decided May 4, 2010.*

2010 WI 32

(Also reported in 782 N.W.2d 85.)

† Motion for Reconsideration denied w/ costs $50 6/10/10.

For the plaintiff-appellant there were briefs (in the court of appeals) by *Michael E. McMorrow and the Law Offices of Michael E. McMorrow,* Mequon; *J. Lewis Perlson, Amy S. Kiiskila, and Michael Best & Friedrich, LLP,* Milwaukee; and *Jonathan V. Goodman and Goodman Law Offices,* Milwaukee, and oral argument by *J. Lewis Perlson and Michael E. McMorrow.*

For the defendants-respondents there was a brief (in the court of appeals) by *Elaine A. Shanebrook and Shanebrook & Falkowski Law Office,* West Bend, *James G. Pouros and the O'Meara Law Firm LLP,* West Bend, and oral argument by *Elaine A. Shanebrook.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is an appeal of an order and judgment from the Circuit Court of Washington County, Patrick J. Faragher, Judge. This court granted the Estate's petition to bypass the court of appeals pursuant to Wis. Stat. §§ 808.05 and 809.60 (2007–08).[1]

¶ 2. Jessica Schleis was named as the recipient of two accounts, one a "Payable on Death" (P.O.D.) account, the other a "Transfer on Death" (T.O.D.) account, totaling over $3 million in the name of James F. Sheppard, the decedent. For ease of discussion, we will refer to both accounts as P.O.D. accounts.[2]

¶ 3. This action was brought by the Estate of James F. Sheppard, deceased, against the defendants, Jessica Schleis (the named recipient of the two accounts); her parents, James Schleis and Mary Jo Schleis (who signed an agreement with the Estate stating that "required estate taxes" would be paid out of the accounts); and XYZ Financial Institutions (named under Wisconsin's Fictitious Name Statute, Wis. Stat. § 807.12, as the institutions that currently have on deposit the funds from the two P.O.D. accounts). The Estate seeks reimbursement from these defendants of the federal and state estate taxes generated by the P.O.D. accounts.

¶ 4. The circuit court granted summary judgment to the defendants, holding that "the obligation to pay estate and inheritance taxes rests on the estate and the personal representative, not the defendants." As to the Wisconsin estate tax, the circuit court concluded that *Firstar Trust Company v. First National Bank of*

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] The two types of accounts are, for purposes of the instant case, substantially similar. *See* Wis. Stat. §§ 705.03(2), 705.26.

46

*Kenosha,* 197 Wis. 2d 484, 541 N.W.2d 467 (1995), "deals with the issue completely" and that the Estate's claim that the defendants were obligated to pay a portion of the Wisconsin estate tax generated by the P.O.D. accounts is not maintainable under state law. The circuit court also rejected the Estate's claim for apportionment of estate taxes because no Wisconsin apportionment statute exists and the court declined to create a common-law equitable apportionment rule. As to the Estate Tax Withholding Agreement signed by Mary Jo Schleis and James Schleis and the Estate for the "required estate taxes" to be paid from the P.O.D. accounts, the circuit court concluded that "the so called agreement does not provide a cognizable remedy," because "there is no federal or state withholding procedure" for P.O.D. accounts.

¶ 5. On appeal from the judgment and order of the circuit court, this court must address four issues: (1) When a decedent dies leaving no will, must a recipient of a P.O.D. account reimburse the Estate for a portion of the federal estate taxes attributable to a P.O.D. account? (2) When a decedent dies leaving no will, must a recipient of a P.O.D. account reimburse the Estate for a portion of the Wisconsin estate taxes attributable to a P.O.D. account? (3) When a decedent dies leaving no will and no Wisconsin statute directs apportionment of estate taxes, does the court apply a common-law limited equitable apportionment rule requiring a recipient of a P.O.D. account to reimburse the Estate for a portion of the federal and state estate taxes attributable to a P.O.D. account? (4) Does an agreement signed by parents of a minor recipient of a P.O.D. account impose liability on the parents or the minor to reimburse the Estate for a portion of the federal and state estate taxes attributable to a P.O.D. account?

¶ 6. We conclude that payment of the federal estate tax is to be made by the Estate under 26 U.S.C. § 2002 (2006),[3] which provides that an estate pays the estate tax on nonprobate property. The P.O.D. accounts at issue do not fall within 26 U.S.C. §§ 2207B and 2036 or any other exception to the general rule that an estate pays the federal estate tax generated by nonprobate assets.[4] We further conclude that the Estate must pay the Wisconsin estate taxes generated by the P.O.D. accounts. In Wisconsin the court has applied the burden-on-the-residue rule for state estate taxes unless the testator directs otherwise. The court declines to establish a common-law equitable apportionment rule. Furthermore, the agreement signed by Mary Jo and James Schleis, parents of Jessica Schleis, to retain 50% of all sums payable on the P.O.D. accounts "for the purpose of paying required estate taxes" is not enforceable against the Schleises. Accordingly, we affirm the order and judgment in favor of the defendants.

I

¶ 7. For the purposes of this appeal, the facts are not in dispute.[5] James F. Sheppard, the decedent, established two payable on death (P.O.D.) accounts prior to

---

[3] All subsequent references to the United States Code are to the 2006 official version unless otherwise indicated.

[4] Probate assets are those transferred by testate or intestate succession; nonprobate assets are those transferred outside of probate, such as life insurance proceeds or jointly held property. For a summary of and illustrations of probate and nonprobate assets, see Katherine W. Lambert, *Death in Wisconsin: A Legal Practitioner's Guide to Postmortem Administration,* §11.1 (9th ed. 2008).

[5] The circuit court observed that this matter "is not fact-intensive. Although there are likely differences of opinion as to

his death. Sheppard designated his goddaughter, Jessica Schleis, as the recipient of these two P.O.D. accounts on his death. James Sheppard died without a will on July 2, 2007, with a total estate valued at approximately $12 million. The P.O.D. accounts designating Jessica Schleis as the recipient were worth approximately $3.8 million at the time of Sheppard's death.[6]

¶ 8. Jessica Schleis was a minor, 17 years old, when James Sheppard died. Jessica's mother, Mary Jo Schleis, communicated with the attorney for the Estate on July 19, 2007. The Estate's attorney, who also represents the Estate before this court, advised Mary Jo Schleis that federal and Wisconsin estate tax obligations would attach to the recipient of the P.O.D. accounts.

¶ 9. At the suggestion of the Estate's attorney and with the advice of their own attorney, Jessica's parents signed, with Jessica's knowledge, an "Estate Tax Withholding Agreement," dated September 3, 2007.[7] The agreement provided that 50% of all sums would remain

---

facts, none of them would seem to be material to any issue of law before the Court. There is no genuine issue as to any material fact."

The circuit court also adopted the Estate's "statement of the true controversy: 'The ultimate question in this case is the extent to which the Schleis family collectively will be required to pay their proportionate share of both federal and state estate taxes on two payable on death accounts . . . .' "

[6] The accounts at issue include a "brokerage account" held at M&I Brokerage Services, Inc., which had $1,115,720.44 on deposit at the time of Sheppard's death, and a "Premier Platinum Checking Account" held at Chase Bank, which had $2,666,854.59 on deposit.

[7] The Schleises' signatures on the agreement are dated August 31, 2007.

on deposit in the accounts for the purpose of paying "required estate taxes." The Estate then supplied the Schleis family with information the Estate had regarding the P.O.D. accounts and with two death certificates, and refrained from taking any action to impede Jessica Schleis's ability to withdraw from the accounts.

¶ 10. Because Jessica Schleis was a minor, her parents petitioned the circuit court on September 13, 2007, to be appointed her guardians.

¶ 11. As part of the guardianship proceeding, the circuit court appointed a guardian ad litem for Jessica Schleis. The guardian ad litem advised the Estate's attorney that she had advised the Schleis family that Jessica Schleis was not responsible for payment of federal or state estate taxes because the P.O.D. accounts were not part of the residuum of the probate estate and that as guardians of Jessica's estate the Schleises could remove all funds from the P.O.D. accounts.

¶ 12. On October 30, 2007, Mary Jo Schleis and James Schleis were appointed guardians for Jessica. The Schleises withdrew the entire balance from the P.O.D. accounts on November 12, 2007. While guardianship proceedings were ongoing, the Schleises retained a second attorney who on November 26, 2007, advised the Estate's attorney that she believed the Estate Tax Withholding Agreement was not binding on her clients, Mary Jo and James Schleis.

¶ 13. On January 17, 2008, the Estate's counsel advised counsel for the Schleises that the Estate maintained the position that Mary Jo Schleis, James Schleis, and Jessica Schleis were responsible to pay their share of all federal and Wisconsin estate taxes and that their obligation was joint and several. The Estate brought this suit seeking reimbursement of estate taxes from Mary Jo Schleis, James Schleis, and Jessica Schleis.

¶ 14. Jessica Schleis reached the age of majority on February 18, 2008.

## II

¶ 15. In reviewing a circuit court's decision granting summary judgment, this court applies the same methodology as the circuit court.[8] Under Wis. Stat. § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

## III

¶ 16. The first issue is whether the Internal Revenue Code provides the Estate a right to recover a portion of federal estate taxes from the recipient of a P.O.D. account. We begin with a brief review of the applicable Internal Revenue Code provisions.

¶ 17. First, 26 U.S.C. § 2002 states that the executor of a decedent's estate shall pay federal estate taxes imposed by 26 U.S.C. §§ 2001 et seq., whether the taxes are attributable to probate or nonprobate property. Section 2002 simply states, "The tax imposed by this chapter shall be paid by the executor." Section 20.2002–1 of the Regulations elaborates to explain that an executor's or administrator's duty to pay federal estate tax applies to the "entire tax, regardless of the fact that the gross estate consists in part of property

---

[8] *Pawlowski v. Am. Family Mut. Ins. Co.,* 2009 WI 105, ¶ 15, 322 Wis. 2d 21, 777 N.W.2d 67.

which does not come within possession of the executor or administrator. . . . " 26 C.F.R. § 20.2002–1 (2009). Thus the probate estate (the portion of the estate within the executor's possession) pays all of the federal estate taxes even if a portion of the total tax is generated by property that has passed to a recipient through a nonprobate transfer (such as a P.O.D. account) and did not come under the executor's control or possession.

¶ 18. Four federal statutory provisions, 26 U.S.C. §§ 2206–2207B, set forth exceptions to the general rule of 26 U.S.C. § 2002 that the probate estate pays the federal estate tax. These four exceptions permit the estate to seek reimbursement for a portion of the federal estate taxes paid from a recipient of a nonprobate asset. The four exceptions are as follows:

| | |
|---|---|
| Section 2206 | Life Insurance Beneficiaries. |
| Section 2207 | Liability of recipient of property over which decedent had power of appointment. |
| Section 2207A | Right of recovery in the case of certain marital deduction property. |
| Section 2207B | Right of recovery where decedent retained interest. |

¶ 19. The Estate argues that the last exception, 26 U.S.C. § 2207B, applies in the present case. Section 2207B states that if the value of property is included in the gross estate on which estate tax has been paid, by reason of 26 U.S.C § 2036, then the decedent's estate has a right of recovery from the person receiving the property equal to the same ratio that the value of the property bears to the taxable estate. Section 2207B(a) provides as follows:

Right of recovery where decedent retained interest.

(a) Estate tax.

(1) In general. If any part of the gross estate on which tax has been paid consists of the value of property included in the gross estate by reason of [26 U.S.C. § 2036] (relating to transfers with retained life estate), the decedent's estate shall be entitled to recover from the person receiving the property the amount which bears the same ratio to the total tax under this chapter [26 U.S.C. §§ 2001 et seq.] which has been paid as—

(A) the value of such property, bears to

(B) the taxable estate.

(2) Decedent may otherwise direct. Paragraph (1) shall not apply with respect to any property to the extent that the decedent in his will (or a revocable trust) specifically indicates an intent to waive any right of recovery under this subchapter with respect to such property.

¶ 20. To determine whether the Estate has a right of recovery under § 2207B, we must therefore examine whether the value of the P.O.D. accounts at issue was included in James Sheppard's gross estate pursuant to 26 U.S.C. § 2036. Only if the P.O.D. accounts were included in the gross estate pursuant to § 2036 does § 2207B apply, giving the Estate a right to seek reimbursement from Jessica Schleis for a portion of the estate taxes.

¶ 21. Section 2036 governs transfers made during a decedent's lifetime in which a decedent retained the right to income from the property or the right to determine who shall receive the property or income from the property. Section 2036(a) provides as follows:

Transfers with retained life estate

(a) General Rule. The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in the case of a bona fide sale for

53

an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

> (1) the possession or enjoyment of, or the right to the income from, the property, or
> (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

¶ 22.　Section 2036 applies where a decedent makes "a transfer" by trust or otherwise during his life retaining for his life, or any period not ascertainable without reference to his death, the income or the right to designate the persons who shall possess or enjoy the property or the income. Section 2036 operates to impose a portion of the federal estate tax on property that a decedent transferred during his or her life but in which the decedent retained an economic benefit until his death. *See Helvering v. Bullard,* 303 U.S. 297, 300 (1938); *Hassett v. Welch,* 303 U.S. 303, 310–12 (1938).

¶ 23.　To determine whether the P.O.D. accounts at issue are included in the gross estate under 26 U.S.C. § 2036, we must determine whether the decedent made "a transfer" during his life by creating the P.O.D. accounts.

¶ 24.　Under Wisconsin law governing P.O.D. accounts, the creation of a P.O.D. account does not amount to a transfer of property by the decedent to the recipient during the decedent's life. When a depositor opens a

P.O.D. account, he or she names a recipient who is to receive the property in the account at the time of the depositor's death.[9] The depositor is not required to notify the recipient when the account is opened or when the recipient is named. Wis. Stat. § 705.26. Prior to the depositor's death, the depositor maintains control over the principal and income of the accounts and can change the P.O.D. recipient at any time. The depositor can remove all the assets from a P.O.D. account and close the account at any time before his or her death, without notifying the P.O.D. recipient. The recipient has a right to the account only if the account exists at the death of the depositor and the recipient survives the depositor.

¶ 25. Section 2036 applies to a transfer with a retained life estate. A property interest must be transferred during the owner's lifetime in order for a life estate to be retained. The P.O.D. account does not constitute such a transfer. During his or her lifetime the depositor is the owner of the P.O.D. account and controls the income, the principal, and the right to decide who gets the property at the depositor's death. With a P.O.D. account the depositor remains the owner during his or her life, transfers nothing during his or her life, and retains total interest in the property during his or her

---

[9] The legislature has authorized Wisconsin financial institutions to offer P.O.D. accounts to their customers. *See* Wis. Stat. §§ 705.01(8)-(9), 705.03(2). Wisconsin Stat. § 705.03(2) specifies that "[a] P.O.D. account belongs to the original payee during the original payee's lifetime and not to the P.O.D. beneficiary or beneficiaries." With respect to T.O.D. accounts, Wis. Stat. § 705.26 provides that "[t]he designation of a TOD beneficiary on a registration in beneficiary form does not affect ownership until the owner's death."

life. The depositor continues to control the principal and the income and could close the account or change the recipient at any time without even notifying the recipient of a change or the existence of the account. The depositor did not transfer any ownership rights or any rights to income during his life.

■

¶ 26. The recipient of a P.O.D. account does not possess a remainder interest. The recipient has only the potential expectancy of receiving the proceeds if the depositor makes no change in the nature of the account or in naming the recipient of the account and the named recipient survives the depositor. There is no transfer to the recipient involved in the creation of a P.O.D. account during the decedent's lifetime as required by 26 U.S.C § 2036.

¶ 27. The Estate argues for a broad definition of "a transfer" under 26 U.S.C. § 2036 to include the creation of a P.O.D. account.[10] The Estate argues that the ownership right the decedent relinquished was the right to include the P.O.D. accounts in his probate estate. This argument would create an overly broad definition of a transfer. The Estate's definition would appear to require that virtually all nonprobate assets be included under 26 U.S.C. § 2036.

---

[10] The Estate suggests that *Doerr v. United States,* 819 F.2d 162, 164 (7th Cir. 1987), provides a definition of "transfer" that would encompass creating and naming the recipients of P.O.D. accounts. *Doerr,* a gift tax case, held that "when a person bestows an economic benefit upon another individual by gratuitously releasing a valuable right as against that individual, the release of that right constitutes a 'transfer of property by gift.' " *Doerr,* 819 F.2d at 164. Here, it cannot be said that when the decedent created the P.O.D. accounts he released any valuable right.

¶ 28. Arguing that such a transfer does take place, the Estate relies on an Indiana court of appeals case, *Burke v. Cleland,* 702 N.E.2d 1078 (Ind. Ct. App. 1998). The *Cleland* case is not helpful to our analysis. *Cleland* turns on the language of the instruments used by a testator to transfer property to beneficiaries. The Indiana court did not analyze 26 U.S.C. § 2036. It simply stated that an inter vivos trust was included in the gross estate under § 2036.

¶ 29. In *Cleland,* the testator's will and an inter vivos trust each contained a clause directing the payment of federal estate taxes, and the two clauses were conflicting. The beneficiaries under the inter vivos trust (executed after the will) and the will were different. Conflict arose about who should pay the federal estate taxes generated by the property in the inter vivos trust.

¶ 30. The Indiana court of appeals held that the last instrument in time, the inter vivos trust, would control when there was an unambiguous tax provision in both a will and an inter vivos trust. The inter vivos trust instrument provided that upon request of the testator's personal representative, the trustee would pay all federal and state death taxes. The Indiana court held that this pay-all-taxes clause rebutted Indiana's presumption of apportionment. Accordingly, the inter vivos trust was responsible for the federal estate tax.

¶ 31. The analysis in *Cleland,* where a specific provision by the testator provided for payment of taxes by the trust, does not apply to the present intestate case. The general rule that the residual estate pays the estate tax is not displaced by any instructions of the decedent.

¶ 32. The Estate relies on other cases holding that the decedent had made a transfer for purposes of 26

57

U.S.C. § 2036. For example, the Estate refers to *Estate of Morton v. Commissioner of Internal Revenue,* 12 TC 380 (1949), in which the election of a settlement option by a surviving spouse under the terms of a life insurance contract was determined to be a transfer during her lifetime that brought the proceeds within her gross estate at the time of her death. The spouse was entitled to the proceeds of the policy but elected to leave the proceeds with the insurer, receiving income with a right to invade the remainder, and naming a recipient who would receive the money on her death. The issue was whether the proceeds were included in the gross estate of the spouse even though she had not elected to receive the lump sum during her lifetime. The court considered that the spouse had made a transfer of the assets.

¶ 33. Another example provided by the Estate is when a decedent set up a bank account in his name as a trustee for specified recipients, sometimes called a savings account trust (or "Totten Trust"). *Estate of Sulovich v. Comm'r of Internal Revenue,* 587 F.2d 845 (6th Cir. 1978). The decedent gave the passbook to the parent of the recipients and authorized the withdrawal of funds. Under banking rules, the decedent retained full income and remainder rights to the account. The issue was whether the funds should be included in the decedent's gross estate, not the applicability of § 2207B for apportionment of estate taxes. The court held that the decedent had not completed a gift of the assets, but that the decedent had made a transfer of the assets under either 26 U.S.C. § 2036 or § 2038, and that the assets were therefore included in the gross estate.[11]

---

[11] *See also Estate of Bowgren v. Comm'r of Internal Revenue,* 105 F.3d 1156, 1160 (7th Cir. 1997) (decedent created an Illinois

¶ 34. These fact patterns are different from the P.O.D. accounts where the accounts remained titled in the decedent's sole and individual name. The cases relied upon by the Estate are inapposite.

¶ 35. We conclude that creation of the P.O.D. accounts did not fall within the meaning of a transfer under 26 U.S.C. § 2036, and therefore the estate does not have a right to recover under 26 U.S.C. § 2207B. Because §§ 2207B and 2036 do not apply, the general rule of 26 U.S.C. § 2002 applies: the residual estate pays the federal estate taxes on the P.O.D. accounts. The P.O.D. accounts are therefore not required to pay any portion of the federal estate taxes.

IV

¶ 36. Next, we turn to whether a recipient of a P.O.D. account must reimburse an Estate for a portion of the Wisconsin estate taxes attributable to the P.O.D. account when a decedent dies with no will. The answer is No.

¶ 37. We agree with the circuit court that *Firstar Trust Co. v. First National Bank of Kenosha*, 197 Wis. 2d 484, 541 N.W.2d 467 (1995), controls. Under *Firstar Trust,* the residue of the estate pays the Wisconsin estate taxes attributable to nonprobate property in the absence of clear directions from the testator providing otherwise.

¶ 38. The Estate does not separately brief the issue of liability for the Wisconsin estate tax. We conclude that under *Firstar Trust,* the Estate's claim

land trust retaining interests during life; property included in gross estate under either 26 U.S.C. § 2036 or § 2038).

59

against the Schleises for a portion of the state estate tax cannot be maintained under Wisconsin law.

V

¶ 39. The third issue is whether a common-law rule of limited equitable apportionment exists, requiring a recipient of P.O.D. accounts to reimburse an estate for a portion of the federal and state estate taxes attributable to the P.O.D. accounts when a decedent dies leaving no will.

¶ 40. Generally, if a decedent does not specify who pays federal or state estate taxes or does not do so effectively, state law will determine how to apportion the payment of federal and state estate taxes among the various beneficiaries.[12] Several states have enacted statutes that determine which beneficiaries will pay federal and state estate taxes. Many states' statutes require recipients of nonprobate assets to pay their pro rata share of the federal and state estate taxes. State courts have also created equitable apportionment remedies that accomplish the same result as an apportionment statute.

¶ 41. Wisconsin does not have an apportionment statute that directs the apportionment of federal or state estate taxes among various beneficiaries when a will or trust does not provide direction.

¶ 42. In response to the Estate's request that the circuit court adopt an apportionment rule, the circuit

[12] *Riggs v. Del Drago,* 317 U.S. 95, 97–99 (1942) (the Internal Revenue Code allocates the federal estate tax burden in certain circumstances; state law generally controls the thrust of the federal estate tax liability).

court declared that "[t]here is no basis either statutorily or in the case law which would give the Court the confidence to create a remedy. More importantly, that is the province of the Supreme Court, not this Circuit Court especially under these facts. The [Estate] is asking the Court to stand the system on its head. It is the probate estate that pays the estate and inheritance taxes. To suggest that this obligation should be distributed to P.O.D. and similar accounts would have a serious negative impact on the administration of probate, generally; there would be tax obligations flowing outside of the classic probate process."

¶ 43. We examine three Wisconsin cases that discuss an equitable apportionment rule: *Will of Uihlein,* 264 Wis. 362, 59 N.W.2d 641 (1953); *Estate of Joas,* 16 Wis. 2d 489, 114 N.W.2d 831 (1962); and *Firstar Trust Co. v. First National Bank of Kenosha,* 197 Wis. 2d 484, 541 N.W.2d 467 (1995). None of the cases adopts or applies an equitable apportionment of estate taxes.

¶ 44. In *Uihlein,* the widow of the decedent chose to take her statutory one-third share of the estate rather than to take her share under the will. The widow claimed her statutory one-third share was to be calculated before federal estate taxes were paid. The effect of the widow's claim was to shift the burden of the federal estate tax to the remainder of the estate, making her share of the estate larger.

¶ 45. The *Uihlein* court likened the federal estate tax to debts and expenses of administration that are to be paid by the residue before calculating the widow's share. The court rejected equitable apportionment of the federal estate tax as "unwarranted judicial legislation." *Uihlein,* 264 Wis. at 376. The court stated that "[t]his court in *Will of Kootz* [228 Wis. 306, 280 N.W. 672 (1938)] rejected the theory that our court should invoke

61

its equity powers to achieve an apportionment of federal estate taxes which would prevent inequities . . . . We deem that it would be unwarranted judicial legislation for this court to attempt to apportion the impact of the federal estate tax . . . . The legislature has the power to enact an apportionment of federal estate tax statute providing for a different method of bearing the impact of federal estate taxes if it should determine the same desirable." *Uihlein,* 264 Wis. at 374, 376.

¶ 46. In *Joas,* this court considered who should pay the federal estate and Wisconsin inheritance tax relating to joint property. The will declared that the estate would pay all taxes for property that passed under the will. Because the joint property was nonprobate property, that is, the property did not pass to the recipients under the will, the court held that the will's provision allocating taxes did not apply to the joint property. The court applied Wisconsin law, placing the burden of paying the federal estate tax attributable to the joint property on the residuum of the probate estate. The court declined to create an equitable apportionment rule.[13]

¶ 47. Finally, in *Firstar Trust,* the court addressed the issue of whether the residue of the estate or a trust bore the burden of the portion of the Wisconsin estate tax generated by the trust property. The court held that the burden of the state estate tax was to be borne by the decedent's probate estate and that the estate was not entitled to reimbursement from the trust for Wisconsin

---

[13] The Wisconsin inheritance tax was at that time a tax on the right to receive the property unless the decedent made some other provision in the will. Because the will's tax clause did not cover nonprobate property, the inheritance tax was payable by the surviving joint tenant who received the property. *Joas,* 16 Wis. 2d at 492.

estate taxes paid. The court reviewed and reaffirmed prior Wisconsin case law, refusing to recognize equitable apportionment of Wisconsin estate taxes, stating: "Although some states have altered the burden-on-the-residue rule by statutory or judicially-created apportionment rules, Wisconsin is among the states that have not done so." *Firstar Trust,* 197 Wis. 2d at 510. As noted there, "This court has consistently rejected the notion of judicially legislated estate tax apportionment rules." *Firstar Trust,* 197 Wis. 2d at 509 n.15.

¶ 48. The Estate argues that *Will of Cudahy,* 251 Wis. 116, 28 N.W.2d 340 (1947), controls to make apportionment of the estate tax burden applicable to nonprobate property. The Estate misinterprets *Cudahy.*

¶ 49. The issue in *Cudahy* was the interpretation of the decedent's will and inter vivos trust. *Cudahy* involved property passing under an inter vivos trust, the terms of which directed the trustee to pay all taxes on the trust property. At the same time, the decedent's will directed the executors to pay "just debts, funeral expenses and all inheritance, estate and succession taxes." The question was which entity, the trust or the estate, should pay Wisconsin inheritance taxes generated by the transfer of the decedent's interest in the trust. The court concluded that the will did not manifest the decedent's intention to provide for the payment of the taxes attributable to the beneficiaries of the trust estate, nonprobate property. The court ruled that the trust should pay the inheritance taxes; the trust disposed of the property and the trust instrument made provision for payment of taxes thereon. *Cudahy,* 251 Wis. at 120–21.

¶ 50. The *Cudahy* court did not hold that nonprobate assets should pay a share of inheritance taxes attributable to those assets. *Cudahy* was an interpretation of the decedent's intentions expressed in written

documents, not an adoption of Wisconsin tax apportionment law. Cudahy is not instructive for the present case.

¶ 51. The Estate asks this court to recognize a common-law equitable apportionment doctrine to prevent injustice to heirs of James Sheppard and to prevent Jessica Schleis from getting a windfall. The Estate views the rule of limited equitable apportionment as promoting fairness and equality.

¶ 52. Wisconsin does not have an apportionment statute. Wisconsin case law declines to recognize an equitable apportionment rule. The precedent is clear: In the absence of a statute or a decedent's written directions, in Wisconsin the burden of the federal and state estate taxes attributable to probate and nonprobate assets falls on the residue of the estate. The rationale for the "residuary rule" has generally been that the decedent intended property transferred outside probate to be free of the usual burdens imposed on the probate estate.[14]

¶ 53. The burden of the federal and Wisconsin estate taxes in the instant case falls on the residue of the estate where the law has placed it. If apportionment is to be the policy of the state, then the state legislature should adopt it.

VI

¶ 54. The final issue relates to the Estate Tax Withholding Agreement signed by Mary Jo Schleis, James Schleis, and the Estate. The Schleises agreed

---

[14] *In Estate of Mason,* 947 P.2d 886, 889 (Ariz. Ct. App. 1997).

that 50% of the balance of the P.O.D. accounts would remain on deposit "for the purpose of paying *required estate taxes*" (emphasis added). The Agreement further provides that "[i]n the event excess sums have been withheld, these monies will be distributed within 30 days following the filing of estate tax returns." The Agreement does not state that Jessica Schleis is required to pay a certain amount or portion of estate taxes. The entire text of the agreement reads as follows:

> The parties agree that 50% or one-half of all payable on death accounts owned by James F. Sheppard at the time of his death will remain on deposit with the bank for the purpose of paying required estate taxes.
>
> In the event excess sums have been withheld, these monies will be distributed within 30 days following the filing of estate tax returns.

¶ 55. The Estate asks the court to hold that this Agreement obligates Jessica Schleis and her parents to pay a portion of the estate tax, even without determining as a prerequisite that Jessica owed any estate tax.

¶ 56. The circuit court concluded that there is no contract binding Jessica Schleis "and further the so called agreement does not provide a cognizable remedy. There is no federal or state withholding procedure for such accounts."

¶ 57. The Agreement refers to "required taxes." The Schleises have no "required taxes." Because the P.O.D. accounts are not required to pay any estate taxes under federal or Wisconsin estate tax law, the Agreement creates no obligation to pay required taxes. This two-sentence document cannot be interpreted to create an independent obligation on the part of the Schleises to pay a share of estate taxes that neither they nor their daughter owed.

¶ 58. Furthermore, Jessica did not sign the agreement and is not a party to it. The document does not suggest that Mary Jo Schleis and James Schleis are signing in any capacity other than personally for themselves. No guardian had been appointed for Jessica, who was a minor when the Agreement was signed. Jessica is not liable for the taxes, and a guardian would not be authorized to make a gift of the taxes to the Estate without express court approval. Wis. Stat. § 54.20(2)(a).

¶ 59. The Estate argues the Agreement is binding because Jessica did not disavow it. No agreement was made on Jessica's behalf, so there was nothing for her to disavow. Furthermore, Jessica's guardian ad litem did advise the Estate of the intent to disavow any purported agreement. By letter dated October 10, 2007, Jessica's guardian ad litem advised the Estate that under Wisconsin law, "the estate taxes would be paid out of the residue of Mr. Sheppard's estate," and that "Mr. & Mrs. Schleis cannot enter a contract regarding their daughter's money." Jessica's position has been consistent: she is entitled to all the proceeds of the P.O.D. accounts and has no obligation to pay the estate taxes.

¶ 60. The Estate claims the result is unjust and unfair and imposes an undue burden on James Sheppard's heirs who take through the probate estate. Federal and state law have determined where the tax liabilities fall. There is no equitable basis to impose a constructive trust as a matter of law. James Sheppard could have directed a different result but he did not.

¶ 61. In sum, for the reasons we set forth, we conclude that payment of the federal estate tax is the burden of the Estate under 26 U.S.C. § 2002, which provides that an estate pays the estate tax on nonprobate property. The P.O.D. accounts at issue do not fall

under 26 U.S.C. §§ 2207B and 2036 or any other exception to the general rule that an estate pays the federal estate tax generated by nonprobate assets. We further conclude that the Estate must pay the Wisconsin estate taxes generated by the P.O.D. accounts. In Wisconsin, the court has applied the burden-on-the-residue rule for state estate taxes unless a testator directs otherwise. The court declines to establish a common-law equitable apportionment rule. Furthermore, the agreement signed by Mary Jo and James Schleis, parents of Jessica Schleis, to retain 50% of all sums payable on the P.O.D. accounts "for the purpose of paying required estate taxes" is not enforceable against the Schleises.

¶ 62. Accordingly, we affirm the circuit court's order and judgment in favor of the defendants.

*By the Court.*—The order and judgment of the circuit court are affirmed.